1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In the matter of the Complaint of STAR & CRESCENT BOAT COMPANY, INC., as owner of the Motor Vessel M/V PATRIOT, U.S. Coast Guard Official No. 1246882, and her engines, equipment, tackle, apparel, appurtenances, etc., for Exoneration from or Limitation of Liability, | Case No.:  3:21-cv-00169-BEN-JLB<br><br>**ORDER**<br><br>**(1) ACCEPTING PLAINTIFF IN LIMITATION'S STIPULATION FOR VALUE AND LETTER OF UNDERTAKING;** |
| STAR & CRESCENT BOAT COMPANY, INC. dba FLAGSHIP CRUISES & EVENTS<br><br>Plaintiff,<br>v.<br><br>SUNSPLASH MARINA LLC, a New Jersey Limited Liability Company; OCEANROCKETS, INC., a New Jersey Corporation; YANK MARINE INC., a New Jersey Corporation; H.O. BOSTROM COMPANY, INC., a Wisconsin Corporation; SEATBELTPLANET.COM, LLC, an Oklahoma Limited Liability Company; and DOES 1 through 10,<br><br>Defendants. | **(2) GRANTING PLAINTIFF'S APPLICATION FOR INJUNCTION; and**<br><br>**(3) ORDERING NOTICE OF COMPLAINT FOR EXONERATION FROM OR LIMITATION OF LIABILITY TO ISSUE**<br><br>**[ECF Nos. 8, 9, 10]** |

## I.   **INTRODUCTION**

Plaintiff in Limitation STAR & CRESCENT BOAT COMPANY, INC., dba FLAGSHIP CRUISES & EVENTS ("Plaintiff in Limitation" or the "Vessel Owner"), as owner of the Motor Vessel PATRIOT, U.S. Coast Guard Official No. 124682, and her engines, equipment, tackle, apparel, appurtenances, etc. (the "Vessel"), brings this admiralty action pursuant to 46 U.S.C. § 30501 *et seq*., the Shipowners' Limitation of Liability Act (the "Limitation Act"), for exoneration from or limitation of liability against Defendants SUNSPLASH MARINA LLC, a New Jersey Limited Liability Company ("Sunsplash Marina"); OCEANROCKETS, INC., a New Jersey Corporation ("Oceanrockets"); YANK MARINE INC., a New Jersey Corporation ("Yank Marine"); H.O. BOSTROM COMPANY, INC., a Wisconsin Corporation ("H.O. Bostrom"); and SEATBELTPLANET.COM, LLC, an Oklahoma Limited Liability Company ("Sealbeltplanet.com") (collectively, "Defendants").  Compl., ECF No. 1 at 2.[1]

Before the Court is Plaintiff in Limitation's (1) Amended *Ad Interim* Stipulation for Value and Costs, ECF No. 8; (2) Letter of Undertaking, ECF No. 8-1; (3) Application for Injunction and Monition,[2] ECF No. 8-2; (4) Amended *Ex Parte* Application for Entry of Injunction and Monition, ECF No. 8-3; and (5) Notice of Complaint for Exoneration from or Limitation of Liability, ECF No. 8-5.  Party-in-Interest and Claimant Jade Spurr ("Ms. Spurr") specially appeared to oppose.  Opposition, ECF No. 9 ("Oppo.").  Plaintiff in Limitation replied.  Reply, ECF No. 10 ("Reply").

After considering the papers submitted, supporting documentation, and applicable law, the Court (1) accepts Plaintiff in Limitation's Stipulation for Value and Costs and Letter of Undertaking as sufficient security; (2) enjoins all proceedings arising out of the Incident, as defined below, giving rise to this limitation action; and (3) directs the Clerk of the Court to issue notice out of and under the seal of this Court.

---

[1]      Unless otherwise indicated, all page number references are to the ECF generated page number contained in the header of each ECF-filed document.

[2]      "Monition" is defined as "[a] summons to appear in court as a defendant or to answer contempt charges."  MONITION, *Black's Law Dictionary* (11th ed. 2019).

## II.     BACKGROUND

### A.     Statement of Facts[3]

On or about December 18, 2012, Defendant Sunsplash Marina entered into a contract with Plaintiff in Limitation for the construction of the Vessel.  ECF No. 1 at 5, ¶ 17.  Defendants Sunsplash Marina, Oceanrockets, and Yank Marine worked on the design and construction of the Vessel (collectively, "Builder Defendants")."  *Id.* at 5, ¶ 17.  Defendants H.O. Bostrom and Sealbeltplanet.com manufactured and supplied Builder Defendants with the passenger seats and seatbelt equipment, which Builder Defendants installed on board the Vessel.  ECF No. 1 at 5, ¶ 18, 8, ¶ 35.  Plaintiff in Limitation alleges that it did not replace the seatbelts or passenger seats on board prior to the incident.  *Id.* at 7-8, ¶ 34.

On August 5, 2018, Ms. Spurr boarded the Vessel for a regularly scheduled jet boat tour of the San Diego Bay.  ECF No. 1 at 5, ¶ 19.  She alleges that, during a high-speed turning maneuver, her safety belt became undone, and she hit her head on a metal railing attached to the Vessel adjacent to her seat (the "Incident").  *Id.*  Plaintiff in Limitation alleges that the value of its interest in the Vessel, at the end of the voyage giving rise to the Incident was no more than $775,000.00.  *Id.* at 6, ¶ 27.

On October 8, 2018, Ms. Spurr's counsel first sent written notice to Plaintiff in Limitation, stating nothing more than that he would be representing Ms. Spurr regarding the Incident.  *See* Exhibit "A" to Declaration of William S. Leonard ("Leonard Decl."), ECF No. 9-4 at 4; Oppo. at 5:13-15.  On October 18, 2018, Plaintiff in Limitation responded, requesting all documentation of Ms. Spurr's alleged injuries; the information for all witnesses to support her claim for damages and liability; and a copy of the video of the incident.  Exhibit "B" to Leonard Decl., ECF No. 9-4 at 6; Oppo. at 5:15-19.  On December 12, 2018, Ms. Spurr's counsel responded to this request in a letter, enclosing a video recording of the voyage.  Exhibit "C" to Leonard Decl., ECF No. 9-4 at 6; Oppo. at 5:20-22.

---

[3]     The majority of the facts set forth are taken from the operative complaint, and in reciting the above facts, the Court is not making any findings.

On April 4, 2019, Ms. Spurr's counsel re-sent the same letter previously sent on December 12, 2018.  Exhibit "D" to Leonard Decl., ECF No. 9-4 at 10; Oppo. at 5:20-22. The following day, on April 5, 2019, Ms. Spurr's counsel sent a fourth letter to Plaintiff in Limitation, enclosing a March 28, 2019 report from Ms. Spurr's neurologist, Mahyar Okhovat, M.D., which diagnosed Ms. Spurr with a diffuse traumatic brain injury ("TBI"). Exhibit "E" to Leonard Decl., ECF No. 9-4 at 12; Oppo. at 5:22-6:2.

On April 25, 2019, Plaintiff in Limitation responded, explicitly requesting, *inter alia*, "[a]ll medical records and bills."  Exhibit "F" to Leonard Decl., ECF No. 9-4 at 14.

On May 2, 2019, Ms. Spurr's counsel sent another letter to Plaintiff in Limitation, enclosing additional medical records from Ms. Spurr.  Exhibit "G" to Leonard Decl., ECF No. 9-4 at 16; Oppo. at 6:3-12.  This letter stated, "There is insufficient billing to send to you at this time and upon our receipt, bills will be sent to your attention."  *Id.*  The letter also responded to Plaintiff in Limitation's request for a list of witnesses but still did not provide any information as to the amount of damages Ms. Spurr was seeking.  *Id.*

On May 14, 2019, Plaintiff in Limitation responded, noting that Ms. Spurr's medical records showed she had sustained previous concussions, and as such, Plaintiff in Limitation requested additional medical records and reiterated its request for Ms. Spurr's medical bills.  Exhibit "H" to Leonard Decl., ECF No. 9-4 at 18.

## B.   Procedural History

On July 31, 2020, Ms. Spurr filed a Complaint for damages in San Diego Superior Court, Case No. 37-2020-00026937-CU-PO-CTL, alleging "traumatic brain injuries and other serious personal injury" as a result of the Incident (the "State Court Action").  ECF No. 1 at 5, ¶ 20.  As of the date of the filing of the complaint in this case, no other lawsuits have been filed by any other person or entity related to the Incident.  *Id.* at 5, ¶ 21.  That same day, Ms. Spurr also gave Plaintiff in Limitation notice of her lawsuit.  *Id.* at 6, ¶ 27.

On January 28, 2021, or within six months of Ms. Spurr's State Court Action, Plaintiff in Limitation filed this action for exoneration of limitation of liability for damages for (1) strict liability, (2) indemnity, and (3) contribution.  ECF No. 1.  Plaintiff in

1  Limitation's complaint, *inter alia*, asks the Court to (1) accept its appraised value of

2  $775,000.00 as the value of the Vessel; (2) enjoin further prosecution of any actions

3  relating to the Vessel; (3) approve the security offered by Plaintiff in Limitation; (4)

4  adjudge that Plaintiff in Limitation is not liable; (5) limit liability, as requested, to the value

5  of the Vessel at the conclusion of the voyage if Plaintiff in Limitation is adjudged liable;

6  (6) hold Defendants liable in products liability for any injuries and damage; (7) order

7  Defendants to indemnify Plaintiff in Limitation for any injuries and damage; (8) order

8  Defendants to contribute to any liability of Plaintiff in Limitation for any injuries and

9  damages; (9) dismiss *with prejudice* any claims Ms. Spurr may file; and (10) order that if

10  Ms. Spurr is entitled to recover, she may only recover against Defendants.  ECF No. 1 at

11  9-10, ¶¶ 1-10.

12        Although the summons issued on January 29, 2021, Plaintiff in Limitation has not

13  filed a proof of service indicating any of the defendants have been served.  *See* ECF No. 3.

14  However, on January 29, 2021, Plaintiff filed the original (1) *Ad Interim* Stipulation for

15  Value and Costs, ECF No. 4; (2) Letter of Undertaking, ECF No. 4-1; (3) Application for

16  Injunction and Monition, ECF No. 4-2; and (4) Notice of Complaint for Exoneration from

17  or Limitation of Liability, ECF No. 5.  However, for the Court to issue an injunction, the

18  security provided must be "equal to the value of the owner's interest in the vessel and

19  pending freight, or approved security."  46 U.S.C. § 30511(b); Fed. R. Civ. P., Supp. R.

20  F(1).  The Complaint, ECF No. 1 at 6, ¶ 27, Kells Christian Declaration, ECF No. 1-3 at ¶ 6,

21  and Stipulation, ECF No. 4 at 2:14-21, all referenced the Vessel as having a value of

22  $775,000.00, but the Letter of Undertaking only undertook an obligation of $750,000.00, ECF

23  No. 4-1 at 3.  Thus, on February 16, 2021, the Court denied Plaintiff in Limitation's requests

24  because the Stipulation and Letter of Undertaking provided insufficient security.  ECF No. 6.

25        On February 2, 2021, Ms. Spurr's counsel sent a meet and confer letter to Plaintiff

26  in Limitation regarding Ms. Spurr's contention that the subject complaint-in-limitation is

27  timebarred.  Declaration of Christopher Edgington, ECF No. 9-3 at 2, ¶ 2; Exhibit "I" to

28  Leonard Decl., ECF No. 9-4 at 20.

On February 9, 2021, Plaintiff in Limitation responded advising that even though the correspondence from Ms. Spurr's counsel provided notice that she had an actual claim, it did not provide notice that the claim might exceed the value of the vessel.  Exhibit "J" to Leonard Decl., ECF No. 9-4 at 23-24.  This letter stated that it had requested additional information to evaluate Ms. Spurr's claim "but generally speaking was ignored."  *Id.* at 24. It further explained that "Star & Crescent did not receive information sufficient to alert it that it might be reasonably possible for Ms. Spurr's damages to be in excess of the value of the Vessel until [an] email exchange with [Ms. Spurr's counsel's] office in late August 2020 to ask for a demand."  *Id.*

On February 17, 2021, Ms. Spurr filed a Notice of Appearance and Intent to Oppose Plaintiff in Limitation's Resubmission of Its Application for an Injunction, advising that she intended to file a claim and response.  ECF No. 7 at 2:16-21.

On February 18, 2021, Plaintiff in Limitation filed the Amended *Ad Interim* Stipulation for Value and Costs, stipulating to the filing of a Letter of Undertaking.  ECF No. 8 at 3:1-6.  Plaintiff also filed a new Letter of Undertaking in the value of $775,000.00, ECF No. 8-1 at 3, and Application for Injunction and Monition, ECF No. 8-2.  The Application for the Injunction advised that the discrepancy in the previous application resulted from a typographical error.  ECF No. 8-2 at 2:7-12.

On February 19, 2021, Ms. Spurr filed an Opposition to Amended Application for Injunction and Monition.  *See* Oppo.  On March 1, 2021, Plaintiff in Limitation filed its reply to Ms. Spurr's opposition.  *See* Reply.

## III.   LEGAL STANDARD

The owner of a seagoing vessel "may bring a civil action in a district court of the United States for limitation of liability" so long as the owner brings the action "within 6 months after a claimant gives the owner written notice of a claim."  46 U.S.C. § 30511(a); FED. R. CIV. P., Supp. R. F(1).  "The complaint may demand exoneration from as well as limitation of liability."  FED. R. CIV. P., Supp. R. F(2).  The plaintiff in limitation must file the complaint "in any district in which the vessel has been attached or arrested to answer

for any claim with respect to which the plaintiff seeks to limit liability," or where "the vessel has not been attached or arrested, then in any district in which the owner has been sued with respect to any such claim."   FED. R. CIV. P., Supp. R. F(9).

Once the owner brings such an action, the owner must provide security for the benefit of the claims either in an amount "equal to the value of the owner's interest in the vessel and pending freight, or approved security" or "that the court may fix from time to time as necessary to carry out this chapter."  46 U.S.C. § 30511(b); FED. R. CIV. P., Supp. R. F(1).  This security may be provided by either depositing the amount with the court or transferring the amount to a trustee appointed by the Court.  46 U.S.C. § 30511(b); FED. R. CIV. P., Supp. R. F(1).  Once the owner has complied with the aforementioned security requirement, "all claims and proceedings against the owner related to the matter in question shall cease."  46 U.S.C. § 30511(c); FED. R. CIV. P., Supp. R. F(1), (3); *In re Complaint of Ross Island Sand & Gravel*, 226 F.3d 1015, 1017 (9th Cir. 2000).  "On application of the plaintiff the court shall enjoin the further prosecution of any action or proceeding against the plaintiff or the plaintiff's property with respect to any claim subject to limitation in the action."  FED. R. CIV. P., Supp. R. F(3).

After the vessel owner provides the required security, the Court will also "issue a notice to all persons asserting claims with respect to which the complaint seeks limitation, admonishing them to file their respective claims with the clerk of the court and to serve on the attorneys for the plaintiff a copy thereof on or before a date to be named in the notice." FED. R. CIV. P., Supp. R. F(4).  This notice will set a claim filing deadline at least 30 days after the Court issues the notice and will "be published in such newspaper or newspapers as the court may direct once a week for four successive weeks prior to the date fixed for the filing of claims."  *Id.*

## IV.   <u>DISCUSSION</u>

Federal courts have exclusive jurisdiction over admiralty and maritime claims.  28 U.S.C. § 1333(1); *Newton v. Shipman*, 718 F.2d 959, 961 (9th Cir. 1983).  Congress has authorized a vessel owner to seek to "limit liability for damage or injury, occasioned

without the owner's privity or knowledge, to the value of the vessel or the owner's interest in the vessel." *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 446 (2001) (citing the Limitation Act). Famously invoked after the sinking of the RMS *Titanic*, the Limitation Act serves to protect maritime commerce, encourage investment in "the American merchant fleet," and "protect vessel owners from unlimited exposure to liability." *Id.* at 453; *Maryland Cas. Co. v. Cushing,* 347 U.S. 409 (1954) (plurality opinion); *see also In re Complaint & Petition of Triton Asset Leasing GmbH*, 719 F. Supp. 2d 753, 755-56 (S.D. Tex. 2010).

Once a vessel owner invokes the protections of the Limitation Act, the Court may restrain all other proceedings against the vessel owner arising out of the same incident. *Ross Island*, 226 F.3d at 1017; *see also* FED. R. CIV. P., Supp. R. F(1), (3). Following the issuance of or concurrently with the injunction, the district court "notices all potential claimants and requires them to file claims with the court within a specified time." *Id.*; *see also* FED. R. CIV. P., Supp. R. F(3), (4). Thereafter, in a proceeding known as a concursus,[4] the district court determines whether there is liability and whether it should be limited. *Complaint of Dammers & Vanderheide & Scheepvaart Maats Christina B.V.*, 836 F.2d 750, 755 (2d Cir. 1988). Where a plaintiff in limitation fails to satisfy a condition precedent to invoking the benefits of the Limitation Act, the district court lacks jurisdiction, must dismiss the petition, and vacate any restraining order. *See, e.g.*, *The Maine*, 28 F. Supp. 578, 582 (D. Md.), *decree aff'd sub nom. Standard Wholesale Phosphate & Acid Works v. Travelers Ins. Co.*, 107 F.2d 373 (4th Cir. 1939) ("[I]n a case such as the present one where a condition precedent to a right to invoke the benefits of the statute has not been met, the admiralty court is without jurisdiction and therefore, the petition must be dismissed and the order restraining exceptants from proceeding in the State Court must be vacated.").

---

[4]    Concursus is Latin for "a running together" and refers to "[a]n equitable proceeding in which two or more creditors claim, usu. adversely to each other, an interest in a fund or estate so that they can sort out and adjudicate all the claims on the fund." CONCURSUS, Black's Law Dictionary (11th ed. 2019).

In this case, Plaintiff in Limitation has provided an Amended *Ad Interim* Stipulation for Value and Letter of Undertaking in lieu of depositing the funds or transferring its interest in the Vessel. ECF No. 8. However, Ms. Spurr opposes Plaintiff in Limitation's Application for the Injunction, arguing that "[t]he complaint-in-limitation is time-barred by the six-month period of limitations of Rule F(1), and the Court lacks subject matter jurisdiction." Oppo. at 2:16-17. She contends that Plaintiff in Limitation "has concealed from the Court that it was provided multiple written notices of Spurr's claim for personal injuries, including traumatic brain injuries, in a course of written communications during the period from October 8, 2018 through May 2, 2019." *Id.* at 2:17-23. According to her, "[t]he six month period of limitations expired on November 2, 2019, (if not earlier), long before the vessel owner filed the complaint-in-limitation on January 28, 2021." *Id.* at 2:23-25. She notes that "[m]edical records enclosed in the pre-litigation written notice letters . . . documented significant brain injuries of a nature where the potential claim amount would routinely exceed (and does exceed) the alleged vessel value." *Id.* at 3:1-4.

Plaintiff in Limitation responds that "Ms. Spurr inappropriately asks the Court not to issue the mandatory and automatic injunction and monition prescribed by Rule F so that she can file a summary judgment motion challenging Plaintiff in Limitation's right to limit its liability in this action, while at the same time continuing to litigate the very same issues in San Diego Superior Court." Reply at 2:2-5. Thus, the Vessel Owner contends that the Court should deny her request because (1) "under Rule F(5), Ms. Spurr has no standing to challenge limitation at this time: she has not yet filed a Claim and Answer in this matter," (2) "even if Ms. Spurr were to formally appear as required by Rule F(5), any challenge to the automatic stay and monition mandated by Rule F would be ineffectual: the Court has no discretion to deny them once a Limitation Action has been filed and security approved," and (3) "the injunction and the monition have no bearing whatsoever on Ms. Spurr's right to pursue summary judgment in this Limitation Action, which she is free to do once she files a claim." Reply at 2:6-14.

The Court agrees with Ms. Spurr that not only may the Court examine subject-matter

jurisdiction at any time, even *sua sponte*, but must do so where issues of the propriety of the Court's jurisdiction are raised, particularly when a party requests injunctive relief. The Court rejects Plaintiff in Limitation's argument that the Court lacks the ability to deny this injunction. Indeed, the Supreme Court itself has affirmed the decision of other district courts denying the injunction Plaintiff in Limitation contends is "automatic." *See, e.g.*, *Parcher v. Cuddy*, 110 U.S. 742, 743 (1884) (affirming the denial of the plaintiff in limitation's motion for an injunction, while stating it was "not inclined to use the extraordinary writ of injunction to stay proceedings in suits begun in the state courts before the appellants filed their [case] in the district court, simply because of the expense that will be consequent upon trials pending the appeal"). Rather, "[a]n injunction is not granted as a matter of course, but only in the sound discretion of the court, when necessary to prevent irreparable injury, for which there is no adequate remedy at law, and not to enforce a right that is doubtful, or to prevent an act the injurious consequences of which are doubtful." *Simonitsch v. Bruce*, 258 F. 331, 334 (8th Cir. 1919) (citing, *inter alia*, *Parcher*, 110 U.S. at 743). If the injunction Plaintiff in Limitation were truly as "automatic" as Plaintiff in Limitation contends, it would not require court approval.

That being said, this admiralty matter "requires us to navigate uncharted waters in order to determine what constitutes sufficient notice of a claim under the Shipowner's Limitation of Liability Act, 46 U.S.C. §§ 30501, *et seq.*" *Orion Marine Constr., Inc. v. Carroll*, 918 F.3d 1323, 1325 (11th Cir. 2019). In doing so, the Court finds Ms. Spurr's notices of her claims did not include monetary amounts. Although a notice need not include an amount to provide notice, *see In re The Complaint of RLB Contracting, Inc., as Owner of the Dredge Jonathan King Boyd its Engine, Tackle, Gear for Exoneration or Limitation of Liab.*, 773 F.3d 596, 602 (5th Cir. 2014), and even though TBIs are serious injuries, it does not follow that by virtue of Ms. Spurr having a TBI, Plaintiff in Limitation had notice of a reasonably probability that the amount of the claim would exceed the value of the Vessel ($775,000.00). As such, Plaintiff in Limitation's limitation action is not time-barred, and the Court has jurisdiction over this case. Had Ms. Spurr's initial 2018 or 2019

-10-

letters provided a demand exceeding the value of the Vessel or included medical bills in response to Plaintiff in Limitation's repeated requests for both items as opposed to simply providing her medical records, this case would likely be time barred.  Moreover, as outlined below, the Court finds Plaintiff in Limitation has provided adequate security to allow the Court to enjoin all related proceedings, including the State Court Action, and order the Clerk of the Court to issue notice.

### A.   District Courts Can Examine Jurisdiction at Any Time

As stated, Plaintiff in Limitation argues that the Court must issue the injunction it requests given the mandatory language of the Limitation Act and Rule F, which both provide that "all claims and proceedings against the owner" related "to the matter in question **shall cease**," whenever the vessel owner complies with the requirements.  46 U.S.C. § 30511e(c); FED. R. CIV. P., Supp. R. F(1), (3).  It contends that the use of "shall" is mandatory language, and "it has long been recognized that this '*cessation of actions*' is effected by operation of law, and that the admiralty court presiding over the dispute has no discretion to deny it."  ECF No. 8-2 at 6:9-12 (citing *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 209 (5th Cir. 2009) ("When a shipowner files a petition under the Limitation of Liability Act, all other suits against the shipowner are automatically stayed."); *Metro. Redwood Lumber Co. v. Doe*, 223 U.S. 365, 372 (1912) ("Nor is the issuance of an injunction necessary to stop proceedings in separate or independent suits upon such claims . . . The very nature of the proceeding and the monition has the effect of a statutory injunction.")).  However, the problem in this case is that if Ms. Spurr is correct, and Plaintiff in Limitation failed to file this limitation action within six months of receiving Ms. Spurr's claim, then, Plaintiff in Limitation failed to comply with the requirements of the Limitation Act.  Such requirements are a condition precedent to this Court issuing both the injunction and the monition, and the Court would be required to deny the injunction.

Ms. Spurr opposes the Application for the Injunction on the basis that not only does the Court have discretion to deny the injunction, but because "[t]he complaint-in-limitation is time-barred by the six-month period of limitations of Rule F(1)," the Court lacks the

subject matter jurisdiction required for it to issue any orders in this case, including an injunction or monition.  Oppo. at 2:16-17.  Plaintiff in Limitation replies that "Ms. Spurr offers no argument or legal authority suggesting that an injunction and monition would be inappropriate here; or that an opposition to an ex parte application for injunction and monition by a putative claimant is allowed."  Reply at 4:10-12.

Article III of the United States Constitution limits the subject-matter jurisdiction of federal courts to justiciable "cases" and "controversies."  U.S. CONST., ART. III, § 2.  The United States Supreme Court has held that for a case to meet the justiciability requirement, a plaintiff must show (1) standing; (2) that the case is ripe; (3) the case is not moot; and (4) the case does not involve a political question.  *See, e.g.*, *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006) ("The doctrines of mootness, ripeness, and political question all originate in Article III's 'case' or 'controversy' language, no less than standing does.").

In the present case, as outlined below, the Court determines that Ms. Spurr raises appropriate considerations pertaining to whether the Court has jurisdiction to enter the injunction requested in the first place.  The only issue pertaining to the Court's jurisdiction that the parties dispute is whether Ms. Spurr has standing to contest the Court's jurisdiction.  As outlined below, because the "notices" Ms. Spurr provided to Plaintiff in Limitation failed to apprise Plaintiff in Limitation of the value of her claim, despite repeated requests, the Courts finds Plaintiff in Limitation's complaint was timely filed, vesting the Court with jurisdiction over this matter, including to enter the requested injunction.

### 1.  *Standing*

Establishing standing requires the plaintiff to plead (1) a concrete and particularized injury in fact that is actual or imminent as opposed to conjectural or hypothetical; (2) a causal connection between the alleged injury and the defendant's challenged conduct; (3) a likelihood that a favorable decision will redress that injury.  *Mojave Desert Holdings, LLC v. Crocs, Inc.*, 987 F.3d 1070, 1078 (Fed. Cir. 2021); *Massachusetts v. EPA*, 549 U.S. 497, 517 (2007) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Plaintiff in Limitation argues that "[t]he Limitation Act and Rule F require claimants

1   to file a claim and/or answer as a precursor to challenging the applicability of the Limitation

2   Act." ECF No. 8-2 at 8:23-27 (citing, *inter alia*, FED. R. CIV. P., Supp. R. F(5)). It contends

3   that *In re Am. River Transp. Co.*, 728 F.3d 839, 842-43 (8th Cir. 2013) holds that "Rule

4   F(5) imposes statutory standing requirements for challenging limitation actions," and "the

5   failure to file a claim and answer means that a putative claimant lacks standing to contest

6   limitation." *Id.* at 8:27-9:3. Thus, according to Plaintiff in Limitation, "Ms. Spurr, who

7   has not filed a claim nor an answer in the Limitation Action, is not yet allowed to oppose

8   Plaintiff in Limitation's request for the automatic injunction of Rule F(4)." *Id.* at 9:24-27.

9       In *In re Am. River Transp. Co.*, the Eighth Circuit "conclude[d] that Rule F(5) creates

10  statutory standing requirements for challenging limitation actions." 728 F. 3d at 842.

11  Plaintiff in Limitation argues that "many courts have recognized that any putative

12  claimants must file claims and/or answers in the Limitation Action before they can request

13  any kind of relief from the court, including by way of motions to dismiss or for summary

14  judgment." ECF No. 8-2 at 9:4-19. To support this argument, it cites to the following

15  cases, which held that potential claimants or movants lacked standing or could not contest

16  a limitation proceeding: *In re Complaint & Petition of Triton Asset Leasing GmbH*, 719 F.

17  Supp. 2d 753, 757-58 (S.D. Tex. 2010); *Matter of Lenzi*, No. CIV. A. 89-4571, 1989 WL

18  146659, at *1 (E.D. Pa. Dec. 1, 1989); *In re Fun Time Boat Rental & Storage, LLC*, 431 F.

19  Supp. 2d 993, 999 (D. Ariz. 2006; *In re Twenty Grand Offshore, Inc.*, 313 F. Supp. 851,

20  853–54 (S.D. Fla. 1970); and *In re Beauvois*, No. 2:10-CV-480-FTM-36, 2010 WL

21  5055833, at *3 (M.D. Fla. Dec. 3, 2010)). However, each of the cases Plaintiff in

22  Limitation cites to support its argument that Ms. Spurr lacks standing is distinguishable:

23  All five of those cases involved a situation where the court had already issued the injunction

24  and monition, and a punitive claimant submitted a filing to the court following the

25  injunction but prior to filing a claim.[5] In this case, however, Ms. Spurr merely raises the

26  ───────────────

27  [5]   In *Triton*, the injunction had already issued when the Court considered whether the
      movants had standing to raise the relief requested in the various motion filed with the court,

28  including a motion to dismiss. 719 F. Supp. 2d at 756. Similarly, in *Matter of Lenzi*, the

fact that it may not be appropriate for the Court to issue the injunction in the first place.

a.   <u>*A Pre-Claim Opposition is Not Prohibited*</u>

Ms. Spurr responds to Plaintiff in Limitation's standing argument by explaining that she intends to file a claim should the Court issue the injunction and monition.  ECF No. 9 at 2:1-17.  However, for now, she specially appears to oppose the Amended Application because the complaint-in-limitation is time-barred by the six-month period of limitations rule under Rule F(1), meaning the Court lacks subject matter jurisdiction over this case.  Oppo. at 2:1-17.  She also contends that Rule F in no way prohibits a claimant from filing

---

Court had also already issued the injunction when the claimant moved for summary judgment.  1989 WL 146659, at *1-2.  The court held that "[a]s Shenkman has not filed a claim, he has no standing in the present action" even though the claimant had filed an answer.  *Id.* at *1.

In *Fun Time*, the court granted the plaintiff in limitation's motion for summary judgment while denying the request for a continuance of various individuals.  431 F. Supp. 2d at 995.  However, the court had already enjoined the prosecution of a state court action when the non-parties sought relief from the court.  *Id.* at 996.  As a result, it reasoned that the parties requesting the continuance had failed to file a claim as required by the notice issued by the Court and filed an answer to the operative complaint instead.  *Id.* at 999.  If the parties seeking relief were not proper claimants to the case, they had no right to seek a continuance so they could conduct discovery to dispute summary judgment.  *Id.*

In *Twenty Grand*, the court had also issued the injunction when various parties filed motions pursuant to Rule 12 of the Federal Rules of Civil Procedure.  313 F. Supp. 851, 853.  However, the court held that filing a claim was not a prerequisite to moving for a more definite statement or moving to strike.  *Id.* at 853-54.  Likewise, in *Beauvois*, the court had issued the injunction and monition, and the plaintiff had published a copy of the approved notice at the time that the plaintiff in limitation sought entry of default against various individuals who had not filed a claim in the case but had filed answers to the complaint.  *Id.* at *1, 3.

In all of these cases, the movants were also attempting to directly contest the petitioner's right to exoneration or limited liability.  *Triton*, 719 F. Supp. 2d at 758.  "As such, the requirements of Rule F(5) were undoubtedly triggered, and courts accordingly examined whether a proper claim and answer had been filed prior to the request."  *Id.*  "To the extent that these courts held that a claimant lacked standing, therefore, their holdings are only applicable in cases where the claimant or putative claimant seeks specifically to contest either the right to exoneration from, or the right to limitation of, liability pursuant to Rule F(5)."  *Id.*

-14-

an opposition to a Rule F(3) *ex parte* application for an injunction and monition. *Id.* at 8:1-3. While she concedes a potential claimant cannot file an answer without filing a Rule F(5) claim, she argues that "she is entitled to file certain motions (such as a Rule 12 challenge) prior to any such claims." *Id.* at 8:13-16. Plaintiff in Limitation replies that "[b]ecause Ms. Spurr has not yet filed an Answer or a Claim, she is still a putative claimant," so "[h]er Opposition puts the proverbial cart before the horse[ ] and should . . . be disregarded due to her lack of standing." Reply at 3:17-19.

Although the Eighth Circuit has concluded that filing a claim in accordance with Rule (5) is a statutory standing requirement for ***challenging*** limitation actions, *In re Am. River Transp. Co.*, 728 F.3d at 842-43, in *Triton*, the court held that a motion to transfer venue of the case was not subject to Rule F(5)'s requirements, 719 F. Supp. 2d at 758. The *Triton* movant sought to transfer the venue of the case rather than directly contest the vessel owner's entitlement to exoneration or limitation of liability. 719 F. Supp. 2d at 758. The *Triton* court noted that "nothing in Rule F(5) states that a claim or answer must be filed before *any* form or relief may be sought from the Court." *Id.* (original emphasis). "Instead, [the claim filing] requirement is triggered only when a putative claimant seeks to contest the merits of the limitation action, or the petitioner's right to exoneration or limited liability." *Id.* However, the movant also filed various motions to dismiss certain claims, and the court held that because those motions contested the right to exoneration and limitation of liability, "they must, under Rule F(5), first file a proof of claim and an answer to [the] Complaint." *Id.* Because the movants had not filed a claim, the court found those motions to dismiss premature and dismissed them without prejudice. *Id.* However, it did not dismiss the motion to transfer venue as it did not challenge the limitation action. *Id.*

Like the *Triton* movant, Ms. Spurr's opposition, although implicitly challenging the right to exoneration (because if the Court lacks jurisdiction, the matter must be dismissed), explicitly raises only the question of whether the Court has jurisdiction. Ms. Spurr herself states she "is merely opposing an ex parte application which affects her legal rights, by requesting purely procedural relief (denial pending a bifurcated proceeding addressing the

statute of limitations issue first)." Oppo. at 8:21-24.  She states "[t]his is not a 'direct' challenge to entitlement to exoneration/limitation." *Id.* at 8:23-24.  As a result, she asserts that her opposition prior to filing a claim is procedurally proper, and should be considered by the Court. *Id.* at 8:25-26.  The Court agrees that, similar to the *Triton* movant's motion to transfer venue, which was not subject to Rule F's requirements, 719 F. Supp. 2d at 758, Ms. Spurr is well within her rights to raise the matter of the Court's jurisdiction.  Further, if the Court lacks jurisdiction, it lacks even the ability to bifurcate this case, as Ms. Spurr requests, and must examine those jurisdictional issues *sua sponte*.

As stated, Plaintiff in Limitation argues that "[o]nce [Ms. Spurr] has perfected standing by filing a claim and answer, she may ask this Court to address her substantive issues" because "[t]he rules and authorities permit her complaints to be addressed—just not yet." ECF No. 8-2 at 2:23-25.  However, Ms. Spurr lacks the ability to file a motion to dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure ("FRCP") because she has not been named as a defendant, and given the Court has yet to issue the monition, she cannot yet be a claimant.  Further, the Local Rules of the Southern District of California[6] provide that "[e]xcept as provided in the federal rules, or by leave of court, no document will be filed in any case by any person not a party thereto." S.D. Cal. Civ. R. 5.1(h).  Ms. Spurr is not yet a party to this case.  However, "[a]n attorney may make a special appearance for a limited proceeding only with the permission of the Court."  S.D. Cal. Civ. R. 83.3(f)(4).  In this case, Ms. Spurr filed a Notice of Special Appearance[7] and Intent to File Opposition to Any Resubmission of Vessel Owner's Application for Injunction and Monition.  ECF No. 7.  Further, other courts have allowed non-parties to oppose a party's motion.  *See, e.g.*, *Securities and Exchange Commission v. Lawrence E. Penn, III, et al.*,

---

[6]     The Local Rules explicitly state they "apply to claims governed by the Supplemental Rules for Certain Admiralty and Maritime Claims of the Fed. R. Civ. P., which are referred to within these rules as Rules A through F." S.D. Cal. Civ. R. A.1.

[7]     A special appearance is where a defendant appears "in court for the sole purpose of contesting the court's assertion of personal jurisdiction over the defendant." APPEARANCE, Black's Law Dictionary (11th ed. 2019).

No. 14-CV-581 (VEC), 2021 WL 1226978, at *15 (S.D.N.Y. Mar. 31, 2021) (allowing two non-party entities to oppose the plaintiff's motion).

In sum, the Court does not find Ms. Spurr's opposition to be procedurally improper or that she lacks standing to raise the issues presented to the Court.

b.   *Ms. Spurr's Claim Did Not Provide Adequate Notice That the Claim Would Exceed the Value of the Vessel*

To invoke the protections of the Limitation Act, a vessel owner must bring a civil action "within 6 months after a claimant gives the owner written notice of a claim."  46 U.S.C. § 30511(a); Fed. R. Civ. P., Supp. R. F(1); *see also RLB*, 773 F.3d at 602.  The Fourth, Fifth, and Sixth Circuits have held that the six month claim filing deadline qualifies as jurisdictional, such that if a plaintiff in limitation fails to file within the deadline, the Court lacks jurisdiction over the limitation action.  *See The Maine*, 28 F. Supp. at 582; *RLB*, 773 F.3d at 602; *Cincinnati Gas & Elec. Co. v. Abel*, 533 F.2d 1001, 1003 (6th Cir. 1976).  The Eleventh Circuit, on the other hand, has held that "[t]he six-month filing deadline specified by 46 U.S.C. § 30511(a) is a non-jurisdictional claim-processing rule, and a shipowner's failure to meet it does not deprive the district court of subject matter jurisdiction but rather provides a basis on which to dismiss the owner's limitation action on the merits."  *Orion Marine Constr., Inc. v. Carroll*, 918 F.3d 1323, 1338 (11th Cir. 2019).  However, even the *Orion* court acknowledged its holding was at odds with a number of other circuits.  *Id.* (citing *In re Eckstein Marine Serv., L.L.C.*, 672 F.3d 310, 315 (5th Cir. 2012); *Cincinnati*, 533 F.2d at 1003).

In *Orion*, the Eleventh Circuit reversed the district court's decision granting a motion to dismiss for lack of subject matter jurisdiction where the movants claimed the vessel owner failed to timely file the limitation action.  918 F.3d at 1325.  *Orion* involved a limitation action filed "[a]fter numerous local residents complained that their homes had been damaged by vibrations caused by [a] barges' pile-driving activities."  *Id.*  Two claimants moved to dismiss the suit, "arguing that Orion had received adequate notice of the claims against it more than six months before it filed, that the action was therefore time-

-17-

barred, and, accordingly, that the district court lacked subject matter jurisdiction." *Id.* In reversing the district court's decision to grant the motion to dismiss, the *Orion* court held that the six month deadline does not "erect a jurisdictional barrier to suit," and instead, is "a non jurisdictional claim-processing rule." 918 F.3d at 1325. Further, it concluded that "[e]ven considering the notices provided by all nine of the original claimants, . . . they failed to reveal a reasonable possibility of claims exceeding the value of Orion's four barges." *Id.* at 1336. Thus, "faced with claims of uncertain value—and even *without* concluding that the notices underlying those claims revealed the requisite 'reasonable possibility'—Orion investigated and determined (in its opinion, with certainty) that the alleged damage was minor." *Id.* at 1338. As a result, it found, *inter alia*, that the notices themselves did not provide notice that would trigger the vessel owner's duty to file. *Id.*

*Orion* resembles the present case in that Ms. Spurr, like the *Orion* movants, asserts that this Court lacks subject matter jurisdiction over this case because the Vessel Owner had notice of her claim more than six months before it filed the limitation action. 918 F.3d at 1328. However, the *Orion* court's denial of the motion to dismiss was based, in part, on whether the notices the vessel owner received more than six months before the complaint was filed qualified as adequate written notice under the Limitation Act. Thus, separate and aside from whether the six month deadline is jurisdictional, the Court must examine whether the claims provided adequate notice.

A party who contends that a limitation action was not timely filed challenges the district court's subject matter jurisdiction." *RLB*, 773 F.3d at 601. "On issues involving jurisdiction, the district court may consider evidence outside the pleadings and resolve factual disputes." *Id.* Plaintiff in Limitation, as the party, asserting jurisdiction, has the burden of proof. *Id.* However, both parties presented the Court with evidence of the pre-litigation letters exchanged between the parties, which the Court considers in determining whether Plaintiff in Limitation received notice of a claim under the Limitation Act.

Ms. Spurr is correct in noting that pre-litigation letters may suffice to provide notice of a claim falling within the purview of the Limitation Act. Oppo. at 4:3-4. "[A]

communication qualifies as 'written notice' if it 'reveals a "reasonable possibility" that the claim will exceed the value of the vessel.'" *RLB*, 773 F.3d at 602. "This standard evokes two inquiries: (1) whether the writing communicates the *reasonable possibility* of a claim, and (2) whether it communicates the *reasonable possibility* of damages in excess of the vessel's value." *Id.* This standard involves a "fact-intensive inquiry into the circumstances of the case." *Eckstein*, 672 F.3d at 317. Courts use "a broad and flexible standard of review—reading letters of notice in their entirety and considering their 'whole tenor'— when determining if sufficient notice was given." *RLB*, 773 F.3d at 605.

In the case of a demand letter, "[a] demand need not express a specific quantum of damages so long as there is a reasonable possibility that a claim's value will exceed the value of the vessel." *RLB*, 773 F.3d at 603. The Second and Seventh Circuits have applied the *Doxsee* Factors to examine the adequacy of letters, pursuant to which "a letter sent to a shipowner by a claimant is sufficient to trigger the six-month period if (1) it informs the shipowner of an actual or potential claim (2) which may exceed the value of the vessel (3) and is subject to limitation." *McCarthy Bros.*, 83 F.3d at 829 (citing *Doxsee Sea Clam Co. v. Brown,* 13 F.3d 550, 554 (2d Cir. 1994)); *see also In re Darin Alan, Inc.*, No. C 03-5639 (VRW), 2004 WL 3310574 (N.D. Cal. Nov. 30, 2004); In *Matter of Fish N Dive LLC*, No. CV 19-00604 LEK-WRP, 2020 WL 6551212, *6 (D. Haw. Nov. 6, 2020). In the absence of Ninth Circuit case law addressing what is required for a writing to constitute a notice of a claim under the Limitation Act, this Court joins other district courts within the Ninth Circuit that have adopted the three *Doxsee* Factors. *Fish N Dive*, 2020 WL 6551212 at *6.

In *RLB*, 773 F.3d at 599, a case that held the six-month deadline is jurisdictional, the Fifth Circuit affirmed the district court's dismissal of the plaintiff in limitation's complaint as time-barred. *Id.* at 606. The plaintiff-vessel owner filed a limitation action seeking to limit its liability to $750,000, or the value of the vessel after a fatal accident resulted in the death of a twelve-year-old child. *Id.* at 599. After examining a series of letters exchanged between counsel for the parties, the district court held that the limitation action was time-barred because the plaintiff in limitation had received written notice of a potential claim

which had a reasonable possibility of exceeding the value of the vessel more than six months before the limitation action had been filed.  *Id.* at 604.

On appeal, similar to Plaintiff in Limitation here, the *RLB* plaintiff in limitation "attack[ed] the district court's conclusion that RLB 'certainly knew' of the $3 million value of the claim[ ] and [sought] to rely on the fact that this settlement offer never appeared in [the] letters, only in [the] rejection."  773 F.3d at 606.  However, the plaintiff in limitation had "no reply to the district court's primary reasoning: RLB should have realized that an action involving the death of a child would easily exceed $750,000 in potential damages."  *Id.*  As a result, the court was "satisfied that more than six months prior to filing its limitation action, RLB had notice of a potential claim the value of which had the reasonable possibility of exceeding the value of its vessel."  *Id.*

Plaintiff in Limitation argues that in *RLB*, "despite the absence of any specific settlement demand by the claimant, the 'reasonable possibility' standard was satisfied, since the vessel owner should have realized that wrongful death cases involving a child can easily exceed $750,000 in potential damages."  Oppo. at 7:17-22.  Ms. Spurr responds that her "notice letters confirmed that [she], a young woman, suffered serious traumatic brain injuries, enduring months after the injury on the vessel, a type of claim which can (and does) easily exceed the alleged vessel value."  *Id.* at 7:21-24.  She contends "[j]udicial economy favors resolving the threshold jurisdictional issue first."  *Id.* at 9:21-22.

Ms. Spurr's October 8, 2018 letter made no mention, whatsoever, of a TBI and merely contained three sentences, advising that Mr. Leonard represented her.  ECF No. 9-4 at 4.  Ms. Spurr's December 12, 2018 and April 4, 2019 letters also made no mention of her injuries.  *See id.* at 8, 10.  It was not until April 5, 2019, that Ms. Spurr's counsel provided an expert report from a neurologist confirming Ms. Spurr had a TBI.  *Id.* at 20.  However, "[t]he phrase 'traumatic brain injury' covers a vast category of damage to the brain."  Andrew M. Lehmkuhl II, *Diffusion Tensor Imaging: Failing Daubert and Fed. R. Evid. 702 in Traumatic Brain Injury Litigation*, 87 U. Cin. L. Rev. 279, 280 (2018).  "Likewise, the severity of a TBI encompasses a wide range, with unique combinations of

-20-

symptoms attributed to each individual." *Id.*  As a result, damages for a TBI can vary greatly.  *Compare Czerski v. Yellow Cab Co-op., Inc.*, No. A104047, 2004 WL 2475559, at *13 (Cal. Ct. App. Nov. 4, 2004) (affirming a judgment of $240,000 in compensatory damages to a pedestrian struck by a taxicab whose claimed injuries included a left knee fracture; a mild concussion, which qualifies as a mild TBI; a cervical and back strain; and loss of several teeth and bleeding from the mouth) *with Ott v. United States*, No. CIV 19-756 WJ/SMV, 2021 WL 77785, at *2 (D.N.M. Jan. 8, 2021) (affirming damages in an administrative claim from $2 million to $7.5 million where the plaintiff suffered from a permanent loss of smell and taste in addition to his TBI).  Unlike the death of a child, which "would easily exceed $750,000," *RLB*, 773 F.3d at 606, the fact that a claimant has a TBI does not necessarily mean the claim would exceed the value of a vessel valued at $775,000.00.  Further, the evidence indicates Plaintiff in Limitation complied with its duty to investigate by repeatedly asking Ms. Spurr for all medical documentation on October 18, 2018, ECF No. 9-4 at 6, and all medical records and bills on April 25, 2019, *id.* at 14. On May 14, 2019, Plaintiff in Limitation again advised that it was looking "forward to receiving the medical bills in due course." *Id.* at 18.  It was not until an "email exchange . . . in late August 2020," in which Plaintiff in Limitation asked for a demand that it received notice there might be a reasonable possibility that Ms. Spurr's damages might be in excess of the value of the Vessel.  ECF No. 9-4 at 24.  Plaintiff in Limitation filed this Complaint on January 28, 2021, meaning that it needed to receive notice no earlier than six  months before that, or by July 28, 2020, for its action to be timely.  Given Plaintiff in Limitation's compliance with its duty to investigate coupled with the wide array of damages that can result from a TBI, the Court finds that none of the notices provided before July 28, 2020 evidence a reasonable possibility that the damages would exceed the value of the Vessel.

In sum, the Court finds that Ms. Spurr's Opposition permissibly raised the issue of whether the Court has jurisdiction to enter the requested injunction.  However, Ms. Spurr's evidence also reveals she did not provide Plaintiff in Limitation with adequate notice of a reasonable possibility that her damages would exceed the value of the Vessel.

**B.   Notice to Other Parties**

Plaintiff in Limitation argues that "the Injunction and Monition are urgently warranted because Ms. Spurr may not be the only claimant in this matter." ECF No. 8-2 at 10:16-17.  It notes that its complaint "affirmatively alleges, *inter alia*, strict liability, equitable indemnity, and contribution causes of action in admiralty against five (5) foreign entity defendants (ECF No. 1 at ¶¶ 4-8), who are anticipated to assert claims against Plaintiff-in-Limitation for equitable and legal indemnity and/or contribution, on similar or additional grounds." *Id.* at 10:17-22.  Ms. Spurr responds by arguing that "[t]here are no known potential claimants other than Spurr, except the 'Doe' products-liability defendants already sued by plaintiff-in-limitation in this action, whose claims are purely derivative to Spurr's claim." Oppo. at 9:11-14 (internal citations omitted).  Plaintiff in Limitation replies that "[t]he lack of monition would . . . engender multiplicity of actions against the vessel owner, in California and beyond, due to the potential related counterclaims and cross-claims of the five entity Defendants, which would be otherwise asserted in the Limitation Action."  Reply at 8:21-25.  It also acknowledges the unserved defendants "are properly named parties, issuance of summons pending, whose anticipated counterclaims against Plaintiff in Limitation would need to be brought in this proceeding." *Id.* at 7:2-4.

The Court is mindful of the fact Plaintiff in Limitation has named five defendants in this matter, who may or may not have an interest in whether this injunction issues, and to date, have not been served with the complaint in this case despite the Court's previous order raising that issue.  Plaintiff in Limitation argues on the one hand, that actions in limitation are unique, but on the other hand, that the FRCP "nonetheless apply in the same manner as in an action at law."  ECF No. 8-2 at 4:9-5:3.  Generally, Rule 65 of the FRCP only allows for the issuance of a temporary restraining order or injunction if the adverse party receives notice.  FED. R. CIV. P. 65(a).  Nonetheless, this Court previously noted that the FRCP's Supplemental Rules provide that the FRCP "also apply to the foregoing proceedings except to the extent that they are inconsistent with these Supplemental Rules." FED. R. CIV. P., Supp. R. A(2).  However, because Supplemental Rule F provides that an

injunction shall issue once the plaintiff provides the required security and applies to the Court for the injunction, without requiring notice to any adverse parties, the Court interpreted the notice requirements of FRCP 65 as inconsistent with Supplemental Rule F and 46 U.S.C. § 30511(c), resulting in Supplemental Rule F applying over FRCP 65.  As a result, the fact that Defendants had not been served would not have prevented this Court from issuing the injunction requested initially.  However, as of today, and due to the errors in Plaintiff's first Application requiring it to re-file with the Court, three months have passed since the filing of the complaint, but none of the defendants have been served.

On the one hand, the Northern District of California has held that "the mandatory order directed by 46 U.S.C. § 815 and Rule F(3) is something quite different than that regulated by Fed. R. Civ. P. 65." *In re Pac. Far E. Line, Inc.*, 43 F.R.D. 283, 285 (N.D. Cal. 1967) (holding that FRCP 65, requiring notice before the issuance of restraining orders was inapplicable to an order secured by the plaintiff in limitation pursuant to Admiralty Rule F(3) because while "preliminary injunctions and restraining orders are by nature discretionary with the court order, . . . the Rule F(3) order is mandatory") (internal citations omitted).  Similarly, a district court in Guam has held that "[u]nlike the injunctive relief available under FRCP Rule 65, this injunction [in limitation actions] is available automatically." *In re Yu Sheng Fishery Co., Ltd.*, 1993 WL 13964701, at *1 (D. Guam July 12, 1991) (holding that because it appeared the plaintiff in limitation had met all requirements under Admiralty Rule F, a stay seemed appropriate and automatic but declining to issue the injunction because given limitation of liability had been set up as mutual affirmative defenses, "the additional proceeding is redundant and unnecessary"). The *Yu Sheng* court also noted that in limitation proceedings, "[n]o threshold showing, such as likelihood of success of the merits, is necessary." *Id.* Rather, "[t]he rule simply provides that the injunction is available 'upon application of the plaintiff.'" *Id.*  Thus, the court reasoned that "[t]here is no question that the requested injunction need not follow local rules concerning motions nor the Federal Rules of Civil Procedure." *Id.*

On the other hand, neither of these is cases are binding on this Court, and the Local

Rules explicitly state they apply to claims governed by Rule F.  S.D. Cal. Civ. R. A.1.  Further, Plaintiff in Limitation refers to its Application as an Amended *Ex Parte* Application for an Injunction, but a party may not seek an order *ex parte* unless the party submits an affidavit or declaration stating that (1) "within a reasonable time before the motion the party informed the opposing . . . when and where the motion would be made," (2) "the party in good faith attempted to inform the opposing party . . . but was unable to do so, specifying the efforts made to inform them," or (3) "for reasons specified the party should not be required to inform the opposing party."  S.D. Cal. Civ. R. 83.3(g).  Plaintiff in Limitation has submitted no explanation as to why it was unable to provide notice to the defendants of its application for this injunction.  *Compare* Declaration of Anna Gourgiotopoulou in Support of Amended Application for Stipulation of Value and Costs, ECF No. 8-6 (providing no explanation as to why the named defendants have not been served with the complaint or notified of this application) *with* S.D. Cal. Civ. R. 83.3(g) (requiring a party seeking *ex parte* relief to at least attempt to notify the opposing party); *see also United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010) (noting that "a violation of due process . . . deprives a party of notice or the opportunity to be heard").

Although the Court finds it has the power to issue the requested injunction under Supplemental Rule F, despite the fact that Plaintiff in Limitation has not served or notified the defendants, the Court expresses concern over whether this failure to serve was intentional—so as to ensure this Motion would be unopposed and "guarantee" the injunction and monition would issue.  Even though the Court issues the injunction, Rule 4.1 of the Local Rules of the Southern District of California requires service of the summons and complaint in compliance with Rule 4 of the FRCP.  *See, e.g.*, Fed. R. Civ. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court— on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.").  In this case, Plaintiff in Limitation filed this case on January 28, 2021, and has ninety (90) days, or until April 28, 2021, to serve the defendants.  If the defendants are not served by

-24-

this date, the Court will set an Order to Show Cause as to why they should not be dismissed.

### C.   Security

Plaintiff in Limitation argues that the previous discrepancy resulted from "an inadvertent typing error, and not a substantive disagreement by the sureties involved to provide security covering, *inter alia*, the value of the Vessel, attested to the be Seven Hundred Seventy-Five Thousand Dollars ($775,000)." ECF No. 8-2 at 5:11-15. Plaintiff's Opposition does not dispute the adequacy of the security. *See generally* ECF No. 9.

Both section 30511 of the Limitation Act and Supplemental Rule F require a plaintiff in limitation to provide security in order to commence a limitation of liability action. However, the Supreme Court has approved alternatives to depositing the funds or transferring the vessel interest by allowing the plaintiff in limitation to stipulate to the value of the vessel. *See, e.g.*, *Hartford Acc. & Indem. Co. of Hartford v. S. Pac. Co.*, 273 U.S. 207, 218-19 (1927) ("Whenever a stipulation is taken in an admiralty suit, for the property subjected to legal process and condemnation, the stipulation is deemed a mere substitute for the thing itself, and the stipulators liable to the exercise of all those authorities on the part of the court, which it could properly exercise, if the thing itself were still in its custody."). "[A] stipulation is generally accepted as security if backed up by insurance covering the vessel's potential liabilities." 29-708 Moore's Fed. Prac.—Civ. § 708; *see also* 3 Benedict on Admiralty § 14, at 2–12 (7th ed. 2008) ("If the ship is still useful to [the shipowner], and he desires to keep her in operation, he will have her appraised and furnish the court with an approved surety company stipulation or pay the cash value for which the ship is appraised, plus freight."). Courts have held that such a stipulation coupled with a letter of undertaking qualifies as sufficient security. *See, e.g.*, *Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1294, n.4 (9th Cir. 1997) (holding that the defendants' "of undertaking, which remains in effect, is sufficient to perfect in rem jurisdiction in the absence of the ship's arrest"); *Dammers*, 836 F.2d at 753  (approving the use of a letter of undertaking from an insurer, "agreeing to assume any liability of the shipowners up to the stipulated amount of $7,671,000" as security).

Concurrently with its complaint, Plaintiff in Limitation submitted the Declaration of Kells Christian Attesting to the Fair Value of the Vessel.  ECF No. 1-3.  Mr. Christian attested to the fact that he is an accredited marine surveyor with the Society of Accredited Marine Surveyors, conducted a valuation appraisal survey of the Vessel, and believes the value of the Vessel is $775,000.  *Id.* at 3-5.

As stated, rather than deposit a sum equal to the value of the Vessel with the Court, on February 18, 2021, Plaintiff in Limitation filed the Amended *Ad Interim* Stipulation for Value and Costs, stipulating to the filing of a Letter of Undertaking.  ECF No. 8 at 3:1-6.  Plaintiff also filed a new Letter of Undertaking in the value of $775,000.00, ECF No. 8-1 at 3, and Application for Injunction and Monition, ECF No. 8-2.

Plaintiff-in-Limitation's Amended *Ad Interim* Stipulation stipulates to its filing of the Letter of Undertaking to pay up to $775,000 for any liability in this action, as outlined therein, and other sums the Court finds necessary.  ECF No. 8 at 2.  The Letter of Undertaking from United States Fire Insurance Company and Continental Insurance Company (the "Insurers"), as insurers for both Plaintiff in Limitation and the Vessel (the "Insureds"), indicates it will "serve as security for costs within the meaning of Rule F(1) of the Federal Rules of Civil Procedure, Supplemental Rules of Certain Admiralty and Maritime Claims . . . and the Court's Local Rules."  ECF No. 8-1 at 1-2.  It states that it will serve as an obligation for the Insurers to pay any judgment entered against the Insureds, excluding punitive and/or exemplary damages, up to $775,000.00, or the value of the Vessel with interest at the legal rate of six percent (6%), plus security for costs in the amount of $500.00.  ECF No. 4-1 at 3; *see also* S.D. Cal. Civ. R. F(1) ("Unless otherwise ordered by a judge, the amount of the security for costs required to be filed in an action for limitation of liability under Rule F(1) is $500.00.").  The Insurers list three policies, which the Court finds adequately cover the value of the Vessel.  *Id.*

In light of the appraisal, the Court finds that Plaintiff in Limitation's Stipulation and Letter of Undertaking provide sufficient security in an adequate amount and include the required security for litigation costs.

### D.    Stay and/or Injunction

Plaintiff in Limitation also seeks an order enjoining the prosecution of the State Court Action against it.  As noted above, both the Limitation Act and Supplemental Admiralty Rules contemplate such a stay once proper security has been provided.  *See, e.g.*, *Esta Later Charters, Inc. v. Ignacio,* 875 F.2d 234, 236 (9th Cir. 1989) (noting that, pursuant to the above provisions, "admiralty courts issue a restraining order or an injunction staying all proceedings pending elsewhere"); *In re San Francisco Bar Pilots,* No. C05-02975 MJJ, 2006 U.S. Dist. LEXIS 2147, at *3 (N.D. Cal. Jan. 24, 2006) (stating that, "[w]hen, as here, a shipowner invokes the protection of the act, a district court is empowered to issue a restraining order or injunction staying all proceedings against the shipowner arising out of the incident").

Approval of the security is a condition precedent to the issuance of the motion and restraining order.  *Dammers*, 836 F. 2d at 753.  However, because the Court concurrently approves the security provided, it also issues the requested injunction.[8]  Consistent with Supplemental Admiralty Rule F, the stay and injunction bar only prosecution of "any action or proceeding against the plaintiff or the plaintiff's property with respect to any claim subject to limitation in the action."  FED. R. CIV. P., Supp. R. F(3).

### E.    Monition

Finally, Plaintiff in Limitation requests an order directing the issuance of notice to potential claimants.  Plaintiff in Limitation assures the Court that once presented with the Order and a copy of the Notice, it will publish the Notice as directed by the Court.  ECF No. 8-2 at 7.  The Court hereby orders that Plaintiff in Limitation provide notice in the form described below by publishing the notice in the Uptown San Diego Examiner for four

---

[8]    The Court notes that "[u]nder the single claimant exception, if only *one* claim has been filed and nothing appears to suggest the possibility of another claim, a district court is required to dissolve its injunction to permit the single claimant to pursue a separate action and jury trial."  *Ross Island*, 226 F.3d at 1017 (internal quotation omitted).  Although there may be other unknown claims that may come forward after the publication of notice, if no other claims come forward, the injunction may not be warranted.  *See id.*

-27-

successive weeks prior to the date fixed for the filing of claims, which shall be thirty (30) days after the issuance of notice.  Further, the notice shall be mailed to Ms. Spurr and any other known potential claimants.

### F.   Doe Defendants

Both parties raise the issue that Plaintiff in Limitation has named Does 1 through 10 in this lawsuit.  Unlike California code pleading, the FRCP neither authorize nor prohibit the use of fictitious parties; however, FRCP 10 does require a plaintiff to include the names of all parties in his complaint. *See Keavney v. Cty. of San Diego*, No. 319CV01947AJBBGS, 2020 WL 4192286, at *4-5 (S.D. Cal. July 21, 2020) (Battaglia, J.) (citing FED. R. CIV. P. 10(a)).  Plaintiff in Limitation, in fact, acknowledges this.  *See* Reply at 7:1-2 (noting that "indeed, the federal rules do not permit 'Doe' defendants").  Further, naming doe defendants implicates Rule 4 requiring service of the complaint.  *Keavney*, 2020 WL 4192286, at *4-5 (noting that "it is effectively impossible for the United States Marshal or deputy marshal to fulfill his or her duty to serve an unnamed defendant").  "A plaintiff may refer to unknown defendants as Defendant John Doe 1, John Doe 2, John Doe 3, and so on, but he must allege specific facts showing how each particular doe defendant violated his rights."  *Id.*  Where a plaintiff fails to link the alleged wrong or explain how any of the unidentified parties he sued personally caused a violation of his rights, the court must dismiss those individuals, especially when they have not been served.  *See, e.g.*, FED. R. CIV. P. 4(m) (providing that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."); *see also* S.D. Cal. Civ. R. 41.1(a); *Keavney*, 2020 WL 4192286 at *4-5 (dismissing the plaintiff's first amended complaint).

Even if the FRCP permitted doe defendant pleading, Plaintiff in Limitation would still need to seek leave of court in order to substitute in the true names of those defendants. As such, the Court dismisses the doe defendants *without prejudice*.

### V.   CONCLUSION

For the above reasons, the Court **ORDERS** that:

1.      The Stipulation Regarding Security for Value and Costs of the Vessel and the Letter of Undertaking are approved;

2.      Pursuant to Rule F(3) of the Supplemental Admiralty Rules, all claims, suits, and proceedings against Plaintiff in Limitation or its property with respect to the matter in question, to wit, the Vessel, shall cease;

3.      Pursuant to Rule F(4) of the Supplemental Admiralty Rules, notice shall issue out of and under the seal of this Court in the form filed herewith, entitled "Notice of Complaint for Exoneration From or Limitation of Liability," to all persons asserting claims with respect to which the complaint seeks exoneration or limitation, admonishing them to (1) file their respective claims, if at all, with the Clerk of the Court and (2) serve on the attorneys for the Plaintiff in Limitation a copy thereof within 30 days of the issuance of the Notice;

4.      Such public notice shall be published in The Uptown San Diego Examiner, a newspaper published in the San Diego Area, once a week for four consecutive weeks;

5.      Plaintiff in Limitation shall, not later than the day of second publication, also mail a copy of the Notice to every person known to have made any claim against the Vessel and/or Plaintiff in Limitation arising out of the alleged Incident, voyage, or trip on or out of which the claims sought to be limited arose; and

6.      The continued prosecution of any and all suits, actions, or proceedings which may already have begun against Plaintiff in Limitation in any court whatsoever to recover damages arising out of, occasioned by, or consequent upon the aforesaid voyage or trip on which the Incident occurred on or about August 5, 2018, and institution or prosecution of any suits, actions, or legal proceedings of any nature whatsoever in any court wheresoever, except in this proceeding for exoneration from or limitation of liability, against the Plaintiff in Limitation and/or the Vessel, in respect of any claim(s) arising out of the aforesaid voyage or trip on which the Vessel was then engaged, or otherwise subject to this limitation proceeding, are hereby stayed and restrained; and

7.    The publication and mailing of copies of the Notice to Claimants, required by Rule F(4) of the Supplemental Rules for Certain Admiralty and Maritime Claims shall constitute due notice to all persons asserting claims with respect to which Plaintiff in Limitation's complaint seeks limitation or exoneration.

8.    Defendant must serve its complaint on all parties in compliance with Rule 4 of the FRCP as well as Local Rule 41.1.  If the parties are not served with the complaint within 90 days of filing the complaint, the Court will dismiss the case against any unserved defendants.  *See* FED. R. CIV. P. 4(m); *see also* S.D. Cal. Civ. R. 41.1(a).

9.    All doe defendants are dismissed *without prejudice*.  Should Plaintiff in Limitation discover additional parties that are appropriate to name in this lawsuit, Plaintiff in Limitation may seek leave of Court to amend its complaint and name such parties.

**IT IS SO ORDERED.**

DATED:    April 16, 2021

_____
**HON. ROGER T. BENITEZ**
United States District Judge

-30-