

FILED

JUL 15 2021

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                    DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

In the matter of the Complaint of STAR & CRESCENT BOAT COMPANY, INC., as owner of the Motor Vessel M/V PATRIOT, U.S. Coast Guard Official No. 1246882, and her engines, equipment, tackle, apparel, appurtenances, etc., for Exoneration from or Limitation of Liability,

STAR & CRESCENT BOAT COMPANY, INC. dba FLAGSHIP CRUISES & EVENTS

Plaintiff,

v.

SUNSPLASH MARINA LLC, a New Jersey Limited Liability Company; OCEAN ROCKETS, INC., a New Jersey Corporation; H.O. BOSTROM COMPANY, INC., a Wisconsin Corporation; SEATBELTPLANET.COM, LLC, an Oklahoma Limited Liability Company,

Defendants.

Case No.: 3:21-cv-00169-BEN-JLB

**ORDER GRANTING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OF DEFENDANTS SUNSPLASH MARINA, LLA AND OCEAN ROCKETS, INC.**

**[ECF Nos. 31, 38, 46]**

# I.   **INTRODUCTION**

Plaintiff in Limitation Star & Crescent Boat Company, Inc. dba Flagship Cruises & Events ("Plaintiff in Limitation"), as owner of the Motor Vessel PATRIOT, U.S. Coast Guard Official No. 124682, and her engines, equipment, tackle, apparel, appurtenances, etc. (the "Vessel"), brings this admiralty action pursuant to 46 U.S.C. § 30501 *et seq.*, the Shipowners' Limitation of Liability Act (the "Limitation Act"), for exoneration from or limitation of liability against Defendants[1] Sunsplash Marina, LLC, a New Jersey limited liability company ("Sunsplash"); Ocean Rockets, Inc., a New Jersey corporation ("Ocean Rockets"); H.O. Bostrom Company, Inc., a Wisconsin corporation ("H.O. Bostrom"); and Seatbeltplanet.com, LLC, an Oklahoma limited liability company ("Sealbeltplanet.com") (collectively, "Defendants"). Complaint, ECF No. 1 ("Compl.") at 2.[2]

Before the Court is the Motion to Dismiss for Lack of Personal Jurisdiction of Defendants Sunsplash and Ocean Rockets ("Movants") brought pursuant to Rules 12(b)(2) and (3) of the Federal Rules of Civil Procedure (the "Motion"). Motion, ECF No. 31-1 ("Mot."). Plaintiff in Limitation opposed. Opposition, ECF No. 38 ("Oppo."). Movants replied. Reply, ECF No. 46 ("Reply"). The Motion was submitted on the papers without

---

[1]   As discussed later on in this order, normally, in an admiralty claim, the limitation plaintiff is the party who has either had a claim filed against it or been sued in another court for a claim brought by an injured party. 2E J. Force & S. Friedell, Benedict on Admiralty, Vol. 1, ch. VIII, § 8.01 (Matthew Bender) (rev. 7th ed. 2019) (May 2021 Update). The limitation plaintiff, in turn, files an action seeking to limit liability, naming as defendants any claimants who seek damages from the limitation plaintiff, who "would normally be plaintiffs in their own right, had they commenced the action originally." *Id.* After filing suit, the limitation plaintiff may also join as third-party defendants, any parties who may share responsibility for the damages sought by the claimants (*i.e.*, the defendants in the limitation action). FED. R. CIV. P. 14(a)(6), (b), (b); *see also* FED. R. CIV. P., Supp. R. C(6)(a)(i). In this case, rather than naming potential or actual claimants as defendants, which, would have been Ms. Spurr, Plaintiff in Limitation named as defendants those parties who may share responsibility for Ms. Spurr's damages and should have been sued as third-party defendants. The viability of such claims are discussed later in this order.

[2]   Unless otherwise indicated, all page number references are to the ECF-generated page number contained in the header of each ECF-filed document.

oral argument pursuant to Civil Local Rule 7.1(d)(1) and Rule 78(b) of the Federal Rules of Civil Procedure ("FRCP"). ECF No. 39.

After considering the papers submitted, supporting documentation, and applicable law, the Court (1) **GRANTS** Movants' Motion to Dismiss for Lack of Personal Jurisdiction; (2) **DENIES as MOOT** Movants' Motion to Dismiss for Improper Venue; and (3) **DENIES** Plaintiff in Limitation's Request for Jurisdictional Discovery.

## II.    BACKGROUND

### A.    Statement of Facts[3]

Plaintiff in Limitation is a California corporation with its principal place of business in San Diego, California. Oppo. at 6:1-5.

Both Sunsplash and Ocean Rockets are limited liability companies organized under the laws of New Jersey with their principal place of business in Tuckahoe, New Jersey. Mot. at 7:23-8:1; Declaration of John Yank, III in Support of Motion to Dismiss, ECF No. 31-2 ("Yank Decl.") at 3, ¶¶ 1-2; Compl. at 3, ¶¶ 4-5 (admitting that Sunsplash and Ocean Rockets have their principal place of business in Tuckahoe, New Jersey). The President and sole shareholder of both companies, John Yank, III ("Mr. Yank"), is also a citizen of New Jersey. Yank Decl. at 3, ¶ 3. Sunsplash utilizes the Ocean Rockets name in the marketing of the boats it constructs. Yank Decl. at 3, ¶ 4; *see also* Mot. at 6:13-14. Other than that, Ocean Rockets has not been in active operation—having no business activity, employees, or income—since before 2012. Mot. at 8:1-3; Yank Decl. at 3, ¶ 4. Mr. Yank advises that both Sunsplash and Ocean Rockets (1) are not domiciled in California; (2) do not conduct business in California; (3) have no physical presence in California; (4) have not consented to litigating in California; (5) have never done any business in California; (6) have never owned or leased real or personal property in California; (7) do not sell any goods or services in California; (8) do not maintain any books or records in California; (9) have no employees working in California; (10) have never maintained a bank account,

---

[3]    The majority of the facts set forth are taken from the operative complaint, and in reciting the above facts, the Court is not making any findings.

office, address, directory listing, answering services, or telephone number in California; (11) have never paid any taxes to the State of California; (12) have never been a party to a lawsuit filed in state or federal court in California (other than this lawsuit); (13) have no registered agent for service of process in California; and (14) do not conduct meetings of their Board of Directors, managers, officers, or shareholders in California. Mot. at 8:11-10:3; Yank Decl. at 4-5, ¶ 8.

In 2012, Plaintiff in Limitation's President, Brad Engel ("Mr. Engel"), approached Mr. Yank, about constructing a new vessel for his company. Oppo. at 7:5-7; *see also* Declaration of Brad Engel in Support of Opposition, ECF No. 38-3 ("Engel Decl.") at ¶ 4. He states that he approached Sunsplash "over other boat builders/shipyards because of [his] knowledge of and experience with their vessels, and in particular with the vessel [it] built for Blue & Gold Fleet, an entity operating thrill ride tours on San Francisco Bay," which still operates in San Francisco Bay. Engel Decl. at 2, ¶ 3. These "pre-contract negotiations with Mr. Yank lasted a few weeks, during which the parties communicated regularly by phone and skype while based in their respective states of California and New Jersey." Oppo. at 7:13-15 (citing Engel Decl. at ¶ 4). Mr. Engel states that during contract negotiations, he expressly informed Mr. Yank "that the vessel was to be used in California, and in particular in San Diego." Oppo. at 7:16-19; Engel Decl. at ¶ 4.

On or about December 18, 2012, Sunsplash entered into a written contract with Plaintiff in Limitation, pursuant to which Sunsplash agreed, *inter alia*, to "design, build, and deliver" the seventy-foot-long Vessel to Plaintiff in Limitation at Sunsplash's construction yard in Tuckahoe, New Jersey by June 7, 2013 in consideration for payment of $1,808,440.00 (the "Construction Contract"). Compl. at 5, ¶ 17; Mot. at 6:3-9; *see also* Exhibit 1 to Mot., ECF No. 31-2 ("Ex. 1") at 7-8; Yank Decl. at 3, ¶ 5; Oppo. at 7:3-7. Section 16.1 of the Construction Contract stated that Plaintiff in Limitation "agree[d] to have Ocean Rockets['] logo on [the] port and starboard of arch at the Contractor's expense," along with the statement "built by www.oceanrockets.com." Ex 1 at 16; Oppo. at 8:4-8. Payment to Sunsplash was via wire transfer progress payments to Mr. Yank's

-4-

designated bank from Mr. Engel's California bank account." Engel Decl. at 3, ¶ 6.

Section 11.3 of the Construction Contract stated that even though the place of contractual delivery was New Jersey, "the Owner intends to remove and relocate the Vessel to California promptly following delivery." Ex. 1 at 14; Oppo. at 7:21-24. It also advised that "[w]ith respect to any faulty or defective workmanship furnished by Contractor, reported in writing to Contractor within nine months after delivery of the Vessel to Owner, . . . Contractor will make repairs and replacements at the Marine Group Boat Works (MGBW) in Chula Vista, California."[4] Ex. 1. at 13; Oppo. at 7:24-27.

Pursuant to Section 15.1 of the Construction Contract, "[a]ny disputes which may arise between the parties out of this Contract," if not resolved through informal settlement discussions, "shall be resolved by binding arbitration before JAMS, pursuant to its

---

[4] Plaintiff in Limitation relies on this provision heavily to argue it provides a basis for the Court to assert personal jurisdiction over Movants. *See* Oppo. at 7:25-27, 10:20-23, 11:11-15, 12:11-14, 13:15-17. The Court finds this provision irrelevant to its analysis for several reasons. First, Sunsplash advises it delivered the Vessel in June 2013, and Plaintiff in Limitation does not dispute this, Mot. at 6:11-12; Yank Decl. at 3, ¶ 6; *see also* Oppo., meaning the time for Sunsplash to repair the Vessel expired in March 2013. Thus, even arguing that warranty claims began accruing on that date rather than expired on that date, because both California and New Jersey law apply a four-year statute of limitations to breach of warranty claims, to the extent Plaintiff in Limitation's claims are actually breach of warranty claims, they would be time-barred. *Compare Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 F. App'x 94, 105-06 (3d Cir. 2013) (noting that under New Jersey law, a four-year limitation period applies to breach of warranty claims and a plaintiff may "only recover for breach of warranty if the defects were discovered during the warranty period"); N.J. Stat. Ann. § 12A:2-725(2) (providing that "[a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach," and "[a] breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered"); *with Blue Dolphin Charters, Ltd. v. Knight & Carver Yachtcenter, Inc.*, No. 11-CV-565-L WVG, 2011 WL 5360074, at *5 (S.D. Cal. Nov. 3, 2011) (applying the California Commercial Code to a contract for construction of a vessel and finding that "the contract at issue here [was] governed by the California Commercial Code, which imposes a four-year statute of limitations for breach-of-contract and breach-of-warranty actions" and was barred by the statute of limitations) (citing CAL. COMM. CODE § 2725).

-5-

Comprehensive Arbitration Rules & Procedures." Mot. at 10:9-23; Ex. 1 at 16. It elaborates that "[s]uch arbitration shall take place in New Jersey in the County of Cape May or such other location as mutually agreed upon by the parties." Mot. at 10:9-23; Ex. 1 at 16. Section 15.2 of the Construction Contract also provided that the agreement "shall be governed by the general maritime law of the United States." Mot. at 10:24-27; Ex. 1 at 16. If no general maritime law applies to a particular issue, "the law of . . . the state of New Jersey in the County of Cape May shall govern." Mot. at 10:24-26; Ex. 1 at 16. Additionally, Section 16.2 of the Contract states that "[i]n the event of litigation in regard to collection or any other dispute that may arise out of or in connection with this agreement, the parties hereto expressly agree and consent to the jurisdiction of the court of the State of New Jersey and further stipulate that Cape May County, New Jersey, will be the proper venue for the legal action." Ex. 1 at 16. The Construction Contract was signed by representatives for Sunsplash on December 19, 2012, and representatives for Plaintiff in Limitation on December 20, 2012. *Id.* at 17. Ocean Rockets was not a party to the Construction Contract, and the parties dispute whether it had any involvement in the design or construction of the Vessel. Yank Decl. at 3, ¶ 4; Oppo. at 17:26-28 (stating that the use of Movants' names in the contract "combined with the open proclamations about Oceanrockets' vessel building services on their websites . . . at the very least suggests that Oceanrockets was also involved in the [Vessel]'s construction, even though it was not a party to that contract").

Around June 2013, Sunsplash delivered the Vessel to Plaintiff in Limitation in Tuckahoe, New Jersey. Mot. at 6:11-12; Yank Decl. at 3, ¶ 6. Mr. Yank assisted with loading and securing the vessel at its yard in New Jersey. Engel Decl. at 3, ¶ 7. From there, Plaintiff in Limitation took possession of the Vessel and transported it to California. Yank Decl. at 3, ¶ 6; *but see* Engel Decl. at 3, ¶ 7 (stating that Mr. Yank's "recommended transport company delivered the boat in San Diego, California"). Since delivering possession of the Vessel on that date, neither Sunsplash nor Ocean Rockets has performed any maintenance, repair, or warranty work the Vessel in California. Yank Decl. at 3, ¶ 7.

-6-

In August 2013, however, Mr. Yank, transported a canopy/pod for the Vessel to California because Plaintiff in Limitation's hired transporter for the canopy/pod ended up being unable to fulfill its agreement to transport the canopy/pod. *Id.* at 3-4, ¶ 7.

Plaintiff in Limitation alleges that Defendants Sunsplash Marina, Oceanrockets, and Yank Marine, Inc., a New Jersey Corporation ("Yank Marine") were all involved in the design and construction of the Vessel (collectively, "Builder Defendants")." Compl. at 5, ¶ 17. It also pleads that Defendants H.O. Bostrom and Sealbeltplanet.com manufactured and supplied Builder Defendants with the passenger seats and seatbelt equipment, which Builder Defendants installed on board the Vessel. *Id.* at 5, ¶ 18, 8, ¶ 35. Plaintiff in Limitation alleges that it did not replace the seatbelts or passenger seats on board prior to the incident. *Id.* at 7-8, ¶ 34.

On August 5, 2018, Ms. Spurr boarded the Vessel for a regularly scheduled jet boat tour of the San Diego Bay. Compl. at 5, ¶ 19. Plaintiff in Limitation alleges that "at the time of the incident," the Vessel was "fully and properly manned, equipped, and supplied, and in all respects seaworthy, and was fit and proper for the service in which the [Vessel] was engaged at the time of the incident." *Id.* at 4, ¶ 11. Ms. Spurr alleges that, during a high-speed turning maneuver, her safety belt became undone, and she hit her head on a metal railing attached to the Vessel adjacent to her seat (the "Incident"). *Id.* at 5, ¶ 19.

Plaintiff in Limitation alleges that the value of its interest in the Vessel, at the end of the voyage on August 5, 2018, was no more than $775,000.00. Compl. at 6, ¶ 27.

## B. **Procedural History[5]**

On July 31, 2020, Ms. Spurr filed a Complaint for damages against Plaintiff in Limitation and Jay Goodrich in the San Diego Superior Court, Case No. 37-2020-00026937-CU-PO-CTL, alleging "traumatic brain injuries and other serious personal

---

[5] A detailed factual and procedural history of this case is set forth in the Court's order on April 19, 2021, in *Star & Crescent Boat Co., Inc. v. Sunsplash Marina LLC*, No. 321CV00169BENJLB, 2021 WL 1526601, at *1-3 (S.D. Cal. Apr. 19, 2021), which the Court incorporates herein.

injury" as a result of the Incident (the "State Court Action"). Compl. at 5, ¶ 20. As of the date of the filing of the complaint in this case, no other lawsuits have been filed by any other person or entity related to the Incident. *Id.* at 5, ¶ 21. On July 31, 2020, Ms. Spurr also gave Plaintiff in Limitation notice of her lawsuit. *Id.* at 6, ¶ 27.

On April 19, 2021, the Court (1) accepted Plaintiff in Limitation's Stipulation for Value and Letter of Undertaking; (2) granted Plaintiff's Application for Injunction; and (3) ordered Notice of Complaint for Exoneration from or Limitation of Liability to Issue. ECF No. 12; *see also Star & Crescent*, 2021 WL 1526601, at *1-3. It also included a provision ordering Plaintiff in Limitation to serve all Defendants within ninety (90) days of filing of the complaint, or by April 28, 2021. *See id.* Accordingly, Plaintiff in Limitation finally served all Defendants between April 21, 2021 and April 27, 2021. *See* ECF Nos. 14-18.

On May 18, 2021, Seatbeltplanet.com timely filed an Answer. ECF No. 23.

On May 24, 2021, Plaintiff in Limitation filed is Affidavit of Publication. ECF No. 27. The following day, on May 25, 2021, Plaintiff in Limitation also filed a Notice of Voluntary Dismissal of Defendant Yank Marine, noting that although Yank Marine had been served, it failed to file a responsive pleading or claim in this case. *See* ECF No. 28.

On May 25, 2021, Ms. Spurr filed a Claim for Damages (although there is no request for any fixed amount of damages anywhere within this claim). ECF No. 29.

On June 11, 2021, Movants timely filed the instant Motion to Dismiss Pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. *See* Mot. On June 28, 2021, Plaintiff in Limitation opposed. *See* Oppo. On July 6, 2021, Movants replied. *See* Reply.

On June 14, 2021, H.O. Bostrom timely filed an Answer. ECF No. 32. That same day, Plaintiff in Limitation also filed an Answer to Ms. Spurr's Claim. ECF No. 33.

## III. LEGAL STANDARD

### A. Motion to Dismiss for Lack of Personal Jurisdiction (Rule 12(b)(2) of the Federal Rules of Civil Procedure)

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter

jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007). Once a defendant files a motion to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure ("FRCP"), the plaintiff bears the burden of establishing personal jurisdiction over the defendant. *Wash. Shoe Co. v. A-Z Sporting Goods, Inc.*, 704 F.3d 668, 671-72 (9th Cir. 2012); *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

Where, as here, the motion is based on written materials and affidavits rather than an evidentiary hearing, a plaintiff is only required to make a "prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)). A "prima facie" showing means that the plaintiff need only demonstrate facts that, if true, would support jurisdiction over the defendant. *Lindora, LLC v. Isagenix Int'l, LLC*, 198 F. Supp. 3d 1127, 1135 (S.D. Cal. 2016).

In determining whether a plaintiff has met his burden, "uncontroverted allegations in the complaint must be taken as true," and "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Dole Food Co., Inc. v. Watts,* 303 F.3d 1104, 1108 (9th Cir. 2002). However, "'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." *Swartz v. KPMG LLP,* 476 F.3d 756, 766 (9th Cir. 2007). Further, although a complaint may plead personal jurisdiction over a defendant, to the extent the defendant moves to dismiss by filing affidavits or declarations refuting the jurisdictional allegations in a complaint, the plaintiff may not rest on those allegations and must support them with the plaintiff's own affidavits or evidence. *See, e.g., Data Disc. v. Systems Tech. Association, Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977) (holding that a court "may not assume the truth of allegations in a pleading which are contradicted by affidavit"); *see also Matter of Am. River Transp. Co. LLC*, No. CV 18-2186, 2021 WL 1295017, at *2 (E.D. La. Apr. 7, 2021) (providing that "[t]he allegations of the complaint, except as controverted by opposing affidavits, are taken as true and all

factual conflicts are resolved in the plaintiff's favor") (citing *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)).

There are two ways to establish personal jurisdiction: general and specific. *Fields v. Sedgwick Associated Risks, Ltd.*, 796 F.2d 299, 301 (9th Cir. 1986).

### B. Motion to Dismiss for Improper Venue (Rule 12(b)(3) of the Federal Rules of Civil Procedure)

A defendant may raise the defense of improper venue by moving to dismiss under Federal Rule of Civil Procedure 12(b)(3) ("Rule 12(b)(3)"). "'[V]enue' refers to the geographic specification of the proper court . . . for the litigation of a civil action that is within the subject-matter jurisdiction of the district courts in general[ ] and does not refer to any grant or restriction of subject-matter jurisdiction providing for a civil action to be adjudicated only by the district court for a particular district." 28 U.S.C. § 1390(a).

Once a defendant challenges venue, the plaintiff bears the burden of showing venue is proper. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). "Unlike a Rule 12(b)(6) motion, a motion under Rule 12(b)(3) does not require that the pleadings be accepted as true." *Color Switch LLC v. Fortafy Games DMCC*, 377 F. Supp. 3d 1075, 1082 (E.D. Cal. 2019), *aff'd*, 818 F. App'x 694 (9th Cir. 2020). "The court is permitted to consider facts outside of the pleading." *Id.*

Normally, 28 U.S.C. § 1391(b) ("Section 1391(b)") governs venue in a civil action. Although cases falling under the Court's admiralty jurisdiction pursuant to 28 U.S.C. §§ 1333 and 1337 "are deemed to be civil actions governed by the Federal Rules of Civil Procedure," *Amazon Produce Network, LLC v. NYK Line*, 143 F. Supp. 3d 252, 254 (E.D. Pa. 2015), *aff'd sub nom. Amazon Produce Network, L.L.C. v. NYK Line*, 679 F. App'x 166 (3d Cir. 2017) (citing FED. R. CIV. P. 1 & 2), they are not considered "civil actions" for purposes of venue under Section 1391, *see, e.g.*, 12 Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 3142 (3d ed.) (April 2021 Update). Instead, "[a]n admiralty or maritime claim . . . is governed by 28 U.S.C. § 1390" rather than Section 1391(b). FED. R. CIV. P. 82; *see also* 28 U.S.C. § 1390(b) (providing that it "shall not govern the venue of a

-10-

civil action in which the district court exercises the jurisdiction conferred by section 1333" unless "as otherwise provided by law," as is the case with Rule 82).

Rule F provides that a complaint for limitation of liability "shall be filed in any district in which the vessel has been attached . . . to answer for any claim with respect to which the plaintiff seeks to limit liability; or, if the vessel has not been attached or arrested, then in any district in which the owner has been sued with respect to any such claim." FED. R. CIV. P., Supp. R. F(9). In other words, "in admiralty, an action may be brought against a corporation in any district court as long as the court has personal jurisdiction over it." *Amazon*, 143 F. Supp. 3d at 254; *see also Meaamaile v. Am. Samoa*, 550 F. Supp. 1227, 1232 (D. Haw. 1982) (dismissing a case for lack of venue and failure of service where it was "clear that venue [did] not lie in Hawaii under traditional admiralty venue rules" because under such rules, "venue of an *in personam* suit is proper where the defendant is found and service of process is made on him, or where his property has been attached," but the defendant was not found in nor could service of process be made in Hawaii); *H & F Barge Co. v. Garber Bros.*, 65 F.R.D. 399, 404, 405 (E.D. La. 1974) ("Hence, a court sitting in admiralty has personal jurisdiction over any defendant sued in personam whom the court can reach with process," while "venue of an in personam action in admiralty lies wherever the court has jurisdiction of the parties."); *Ocean Science & Eng'g, Inc. v. International Geomarine Corp.*, 312 F.Supp. 825, 829 n.5 (D. Del. 1970) (noting that because the district court's jurisdiction is based on admiralty jurisdiction under 28 U.S.C. § 1333, "the statutory venue provisions of 28 U.S.C. § 1391(b) are inapplicable, and "[a]n admiralty action may be brought against a corporation in any United States District Court which can obtain personal jurisdiction over that corporation"). Thus, "[i]n federal admiralty practice, personal jurisdiction and venue analyses merge so that venue is proper in any district in which valid service of process may be had on the defendant." *Ingersoll Mill. Mach. Co. v. J. E. Bernard & Co.*, 508 F. Supp. 907, 909, 913 (N.D. Ill. 1981); *see also Sunbelt Corp. v. Noble, Denton & Assoc., Inc.*, 5 F.3d 28, 30-31 n.5 (3d Cir. 1993) (providing that "[i]n other words, venue and personal jurisdiction in this instance are

-11-

conflated," meaning that its "resolution of the correctness of the district court's determination that Phillyship is subject to personal jurisdiction in Texas will also resolve whether or not the Southern District of Texas is a proper venue").

When venue is proper where the plaintiff originally filed suit, as is the case here when considering Rule F, three mechanisms allow the case to be transferred to another venue: First, 28 U.S.C. § 1404(a) ("Section 1404(a)") allows the district to court to transfer the case to another federal district court where venue is also proper. Second, if the court determines it lacks personal jurisdiction, 28 U.S.C. § 1631 allows the court to either dismiss the case, or in the interests of justice, transfer it "to any other such court . . . in which the action . . . could have been brought at the time it was file." *See also Fitbit, Inc. v. Koninklijke Philips N.V.*, 336 F.R.D. 574, 586-87 (N.D. Cal. 2020) ("Where personal jurisdiction is lacking, courts within this district have variously transferred actions under 28 U.S.C. § 1406(a) or 28 U.S.C. § 1631."). Third, where venue would also be proper in a non-federal forum (*i.e.*, a foreign or state tribunal), the doctrine of forum *non conveniens* allows the court to transfer the case in favor of another jurisdiction. *See, e.g., Amazon*, 143 F. Supp. 3d at 253-54 ("When venue is proper and the forum selection clause calls for dispute resolution in a state or foreign tribunal, it is not possible to effect a transfer under § 1404(a).") On the other hand, when venue where the plaintiff originally filed suit was improper, 28 U.S.C. § 1406 allows a district court to either (1) transfer the case to another federal district court or (2) dismiss the case. "In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion (or a *forum non conveniens* motion) must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 62 (2013). Where parties challenge venue on the basis of a forum selection clause, however, the Supreme Court has held that if, after disregarding a contractual forum selection, venue would otherwise be proper in the district in which the plaintiff filed suit, a motion to dismiss for improper venue pursuant to Rule 12(b)(3) is not the proper means for challenging venue. *Atl. Marine*, 571 U.S. at 56; *see also Milliner v. Bock Evans Fin.*

-12-

*Couns., Ltd.*, 114 F. Supp. 3d 871, 876-77 (N.D. Cal. 2015) ("As an initial matter, Defendant improperly seeks dismissal of Plaintiffs' complaint under Rule 12(b)(3) for improper venue on the basis of an arbitration provision.[6]"). Rather, the proper procedural mechanism for enforcing a forum selection clause in a contract, when venue would otherwise be proper, and the clause points to a particular federal district, is a motion to transfer made under Section 1404(a),[7] or if the clause points to foreign or state tribunal, through the doctrine of *forum non conveniens*. *Atl. Marine*, 571 U.S. at 59-60; *see also Milliner*, 114 F. Supp. 3d at 876-77.

## IV.   **DISCUSSION**

Movants seek to dismiss this case pursuant to Rule 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure ("FRCP"). First, Movants argue that personal jurisdiction is lacking as they "have zero contacts with the State of California, such that neither specific nor general jurisdiction is present." Mot. at 7:14-16. Second, Movants point out that "[t]he subject matter of the dispute has no connection with any actions taken by [them] . . . in California, and [they] . . . do not have sufficient minimum contacts with the State of California for the Court to exercise personal jurisdiction over them." *Id.* at 8:8-11. Third, Movants argue that the "Complaint must be dismissed as to [them] as they have contractually agreed that this dispute, which relates to the construction of the vessel, would be resolved through JAMS arbitration in Cape May County, NJ." *Id.* at 11:2-4.

Plaintiff in Limitation opposes by arguing that Movants' conduct giving rise to Plaintiff in Limitation's indemnity and contribution claims produced the adverse effects in this forum state, and Movants manifestly knew the Vessel was going to be operated long-term in California and had additional related contacts with the forum state. Oppo. at 5:2-

---

[6]   Courts construe an arbitration provision as a forum selection clause. *Polimaster Ltd. v. RAE Systems, Inc.*, 623 F.3d 832, 837 (9th Cir. 2010).

[7]   This provision allows a district court to "transfer any civil action to any other district or division where it might have been brought or . . . any district . . . to which all parties have consented" if it favors "the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a).

-13-

10. Next, Plaintiff in Limitation contends that Movants' argument that "the dispute is subject to contractual arbitration in New Jersey also fails because Star & Crescent's claims here do not arise out of the contract, but are based in tort and equity," so "the arbitration provision does not apply." *Id.* at 5:15-17. Further, Plaintiff in Limitation "only had a contract with Sunsplash Marina, not Oceanrockets," so any claims against Ocean Rockets would not be subject to arbitration. *Id.* at 5:18-19.

Movants reply that (1) subjecting them "to general jurisdiction because they sold one other vessel to another California entity defies controlling case law and due process"; (2) "Plaintiff also fails to identify forum contacts associated with its tort claims to establish specific jurisdiction" given "Plaintiff relies almost entirely on contacts relating to its negotiation and execution of the Construction Contract and mixes case law relating to  contract contacts with intentional tort contacts"; (3) "[j]urisdictional discovery is unwarranted and will not change the outcome in this case under either test"; and (4) "Plaintiff's argument that the arbitration clause does not apply to its tort based claims is misguided and ignores the New Jersey choice of law clause." Reply at 2:6-16.

"The question of personal jurisdiction, which goes to the court's power to exercise control over the parties, is typically decided in advance of venue, which is primarily a matter of choosing a convenient forum." *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979). Thus, the Court decides Plaintiff's Motion to Dismiss for Lack of Personal Jurisdiction first, **GRANTING** it on the basis that Movants lack sufficient minimum contacts with the forum state of California. Second the Court addresses Movants' Motion to Dismiss for Lack of Proper Venue, which the Court **DENIES** as moot. Having concluded the Court lacks personal jurisdiction over Movants, the Court also **DENIES** Plaintiff in Limitation's request for jurisdictional discovery.

### A.  Motion to Dismiss for Lack of Personal Jurisdiction

Movants contend that "[a]pplication of the law to the facts of this case requires a finding that exercising personal jurisdiction over Sunsplash/Ocean Rockets, residents of New Jersey and not California," who lack a relationship to the forum state, "would be a

-14-

violation of constitutional due process and they should be dismissed from this lawsuit." Mot. at 11:8-11, 12:7-11. Plaintiff in Limitation responds that "[t]he evidence shows that Movants have purposefully availed themselves of the benefits and protections of the State of California in numerous ways, including" by (1) knowingly contracting with at least two California businesses; (2) constructing two vessels that they knew would be operated in California waters; (3) assisting with delivery of both these vessels to California; (4) purposefully advertising their services in California by prominently displaying their business name and logo on six-foot long signs on both the port and starboard sides of the *ROCKETBOAT* and the *PATRIOT*; (5) purposefully engaging in economic activity in California in connection with both of these transactions; (6) causing injury to Ms. Spurr; and (7) causing exposure to liability for Star & Crescent. Oppo. at 19:21-20:5.

Jurisdiction of courts falls into one of three categories: (1) *in personam* jurisdiction, where the Court asserts authority over a person to impose a judgment on that defendant personally; (2) *in rem* jurisdiction, where the Court asserts authority over property within its territory, which may be used to satisfy the judgment, but the property owner will not be held personally liable; or (3) *quasi in rem* jurisdiction, where the Court asserts jurisdiction over a person, although the objective is to secure a judgment over property in which those persons have an interest. *Shaffer v. Heitner*, 433 U.S. 186, 199 n.3 (1977). Where a vessel owner filed an action for limitation of liability and transfers its interest in the Vessel to the Court, the Court's jurisdiction attaches both *in rem* and *in personam*. *See, e.g., Hartford Acc. & Indem. Co. of Hartford v. S. Pac. Co.*, 273 U.S. 207, 215 (1927) (providing that "the court may enter judgment in personam against the owner as well as judgment in rem against the res, or the substituted fund") (internal citations omitted).

The Due Process Clause of the Fourteenth Amendment limits the power of courts to enter judgments against non-resident defendants who have not been served with process within the boundaries of the state in which the court asserting *in personam* jurisdiction sits. *Pennoyer v. Neff*, 95 U.S. 714 (1877), *overruled in part by Shaffer v. Heitner*, 433 U.S. 186 (1977); *see also* U.S. CONST. AMEND. XIV, § 1 (preventing states from depriving "any

-15-

person of life, liberty, or property, without due process of law"). In this case, both Movants were served on April 21, 2021, in Tuckahoe, New Jersey, ECF Nos. 15, 16, meaning they were not served with process within the boundaries of California.

In order to subject a non-resident defendant to personal jurisdiction, that defendant must have enough minimum contacts with the forum state that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). By requiring these individuals to have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign," *Shaffer*, 433 U.S. at 218 (Stevens, J., concurring in judgment), the Due Process Clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit," *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). For example, "[i]t is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State." *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957). "The forum State [also] does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State" and those products subsequently injure forum consumers. *World-Wide*, 444 U.S. at 297-98.

To determine whether jurisdiction is appropriate, courts first determine whether it is (1) authorized and (2) Constitutional. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). Although 28 U.S.C. §§ 1331(1) and 1333[8] authorize federal courts to assert

---

[8] These statutes vest this Court with jurisdiction of this case. *See, e.g.*, 28 U.S.C. § 1331 (providing that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"); *see also* 28 U.S.C. § 1333(1) (providing that "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of . . . [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled"). This case

-16-

exclusive jurisdiction over admiralty and maritime claims, *Newton v. Shipman*, 718 F.2d 959, 961 (9th Cir. 1983), the Ninth Circuit has held that the Limitation Act does not provide an independent foundation for federal admiralty jurisdiction. *See Seven Resorts, Inc. v. Cantlen*, 57 F.3d 771, 773 (9th Cir. 1995) (noting that "the party seeking to invoke maritime jurisdiction must show a substantial relationship between the activity giving rise to the incident and traditional maritime activity"). Thus, if no federal statute authorizes jurisdiction, the district court applies the law of the state in which it sits. FED. R. CIV. P. 4(k)(1)(A); *Collegesource v. Academic One*, 653 F.3d 1066 (9th Cir. 2011). California's long-arm statute permits jurisdiction coextensively with the due process clause, authorizing jurisdiction wherever allowed by the state. CAL. CIV. PROC. CODE § 410.10; *Mavrix Photo, Inc. v. Brand Tech., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). Once confirming statutory authorization for the assertion of jurisdiction exists, courts analyze whether personal jurisdiction over a defendant comports with federal due process requirements by examining whether a basis exists to assert general jurisdiction or specific jurisdiction. *Loomis v. Slendertone Distribution, Inc.*, 420 F. Supp. 3d 1046, 1064 (S.D. Cal. 2019) (Anello, J.).

        As outlined below, the Court finds that the facts of this case show no basis for general or specific jurisdiction exists.

    1.  ***General Jurisdiction***

        "General jurisdiction—as applied to a corporation—arises when a foreign corporation's affiliations with the State are so continuous and systematic as to render it

arises under the laws of the United States pursuant to statutory authorization from several federal laws, mostly pertaining to the Limitation Act. *See, e.g.*, 46 U.S.C. §§ 30511(a) (allowing the owner of a seagoing vessel to "bring a civil action in a district court of the United States for limitation of liability" so long as the owner brings the action "within 6 months after a claimant gives the owner written notice of a claim"); 30102(a)(1) (providing that "[t]he owner and master of a vessel, and the vessel, are liable for personal injury to a passenger . . . caused by" negligence); 30906(a) (noting that "[a] civil action under this chapter shall be brought in the district court of the United States for the district in which— (1) any plaintiff resides or has its principal place of business; or (2) the vessel or cargo is found"); 30905 (requiring that "[a] civil action under this chapter must be brought within 2 years after the cause of action arose").

-17-

essentially at home in the forum State." *Loomis*, 420 F. Supp. 3d at 1064-65 (internal quotations omitted). Courts have asserted general jurisdiction over a defendant where the defendant (1) has been served with process while voluntarily within the form, (2) is domiciled within the forum, or (3) consents to the Court's jurisdiction. *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880-82 (2011) (Kennedy, J., plurality); *Pennoyer*, 95 U.S. at 722. "Each of these examples reveals circumstances, or a course of conduct, from which it is proper to infer an intention to benefit from and thus an intention to submit to the laws of the forum State." *J. McIntyre*, 564 U.S. at 881 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 (1985)). "These examples support exercise of the general jurisdiction of the State's courts and allow the State to resolve both matters that originate within the State and those based on activities and events elsewhere." *Id.*

In this case, Movants (1) were not served within the forum; (2) are not domiciled in the forum; and (3) do not consent to the Court's jurisdiction. Thus, no traditional basis for general jurisdiction exists. "Absent one of the traditional bases for jurisdiction, the Due Process Clause requires that the defendant have 'certain minimum contacts' with the forum 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Good Job Games Bilism Yazilim Ve Pazarlama A.S. v. SayGames LLC*, 458 F. Supp. 3d 1202, 1206 (N.D. Cal. 2020) (quoting *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945)). However, the Ninth Circuit has held that a corporation is not subject to general jurisdiction in California where, *inter alia*, it (1) has its principal place of business outside the forum state; (2) has no office, staff, or physical presence in the forum state; (3) was not licensed within the forum state; (4) indirectly made purchases of items imported by California entities; or (4) had a California choice-of-law provision in some of its sales contracts. *Loomis*, 420 F. Supp. 3d at 1065 (holding that "[g]iven the facts that Defendant is neither incorporated in nor has its principal place of business in California, Plaintiff has not provided the Court with sufficient evidence to meet the exacting standard of being 'essentially at home' in California"). In fact, the Supreme Court has stated that only in an exceptional case, where "a corporation's operations in a forum

-18-

other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State," will a foreign corporation be subject to general jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919-20 (2011) (holding foreign subsidiaries of an Ohio corporation were subject neither to general nor specific jurisdiction as to a lawsuit filed in North Carolina brought by the estate of two minor North Carolina residents killed in a bus accident in France).

For example, in *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 409-10 (1984), the survivors and representatives of four United States citizen-decedents who died in a helicopter crash in Peru brought suit against a Colombian corporation with its principal place of business in the city of Bogota. The plaintiffs filed suit in a Texas district court on the basis that the defendant (1) negotiated a contract in Houston; (2) purchased helicopters, spare parts, and accessories in Fort Worth; (3) sent prospective pilots to Fort Worth for training; (4) had management and maintenance personnel visit Fort Worth; and (5) received over $5 million in payments drawn upon the First City National Bank of Houston. *Id.* at 411. However, the defendant had no other contacts with the State of Texas: It (1) was not authorized to do business there; (2) never had an agent for service of process there; (3) never had any personal or real property in Texas; (4) never solicited business in Texas; (5) never maintained any offices of establishments there; and (5) never had any employees based there. *Id.* The Supreme Court held that the assertion of general jurisdiction over the defendant would violate the Due Process Clause. *Id.* at 418-19.

Movants argue that as in *Goodyear* and *Helicopteros*, the evidence in this case "overwhelmingly demonstrates that Sunsplash/Ocean Rockets are not doing business in California so as to submit itself to the general jurisdiction of the Court." Mot. at 14:26-15:1. They also contend that they are New Jersey boat builders and are "[i]n no sense . . . at home in California," so "general jurisdiction cannot be used to satisfy due process for this Court to exercise personal jurisdiction over [them]." *Id.* at 16:18-21. Plaintiff in Limitation seems to tacitly admit that it is unlikely that Movants are subject to general

-19-

jurisdiction, scantly addressing the issue and merely stating, "Movants may also be subject to general jurisdiction in California, as they manufactured, sold, and delivered at least one other vessel to a California tour boat company, indicating a potential domestic course of business making them at home in this state." Oppo. at 5:11-14. Movants reply that their performance of a Construction Contract and delivery of the Vessel in New Jersey, "and even one other vessel—also designed, built and delivered in New Jersey—simply do not satisfy the 'continuous corporate operations within a state . . . so substantial and of such a nature as to justify suit against it on a cause of action from dealings entirely distinct from those activities' to satisfy general jurisdiction." Reply at 2:26-3:3.

Movants' contacts with California are limited to asking Plaintiff in Limitation to place their logo on the side of the Vessel in this case and the vessel in San Francisco (*i.e.*, two advertisements in the forum state) and helping Plaintiff in Limitation transport the canopy to California on one occasion and only because the original entity contracted to do this task could no longer do it. These contacts pale in comparison to those the defendant in *Helicopteros* had with the forum state. 466 U.S. at 411. Thus, if the Supreme Court held that general jurisdiction over the *Helicopteros* defendant would violate the Due Process Clause, so too would general jurisdiction in this case. Thus, the traditional bases for general jurisdiction (e.g., the place of incorporation or principal place of business for a corporation) are outside the forum state, and given Movants were not registered with the California Secretary of State, and lack continuous and systematic contacts with California, general jurisdiction is improper.

### 2. *Specific Jurisdiction*

"Where general jurisdiction is inappropriate, a court may still exercise specific jurisdiction if the defendant has sufficient contacts with the forum state in relation to the cause[s] of action." *Sher*, 911 F.2d at 1361 (citing *Data Disc, Inc. v. Sys. Tech. Assocs.*, *Inc.*, 557 F.2d 1280, 1286 (9th Cir. 1977)). To evaluate whether the Court should assert specific jurisdiction over Movants, the Court applies the Ninth Circuit's three-pronged test for determining whether a defendant has sufficient minimum contacts with the forum state.

-20-

*Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020). This test examines whether the (1) defendant has *either* purposefully (a) directed his activities towards the forum state or initiated a transaction with the forum state or one of its residents or (b) availed himself of the privileges and benefits of the forum state permitting him to benefit from the protections of its laws; (2) cause of action arises out of the defendant's activities related to the forum state; and (3) assertion of jurisdiction is reasonable and comports with "fair play and substantial justice." *See id.*

As set forth below, the Court finds that Movants have neither purposefully availed themselves nor purposefully directed their actions towards California. Additionally, the cause of action does not arise out of Movant's activities related to California, and asserting personal jurisdiction over them would not comport with fair play and substantial justice.

> a. <u>Moving Defendants have neither purposefully directed their activities towards the forum state nor purposefully availed themselves of the forum</u>

Although often conflated, purposeful direction and purposeful availment remain two distinguishable concepts. *Schwarzenegger*, 374 F.3d at 802. Purposeful availment is most frequently analyzed in suits evincing a defendant's actions within the forum (such as contracts), while purposeful direction utilizes evidence of a defendant's actions outside the forum state but directed at the forum (such as distribution or advertising) in order to demonstrate the defendant purposefully directed his conduct. *Id.* Purposeful direction analysis relates more to suits involving torts, like the present limitation of liability case that ultimately arises out of a personal injury. *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998).

In this case, Plaintiff in Limitation's Complaint for exoneration of limitation of liability for damages alleges claims for (1) strict liability, (2) indemnity, and (3) contribution. *See* Compl. In cases involving intentional torts, courts analyze purposeful direction by applying the *Calder* effects test. *Holland Am. Line Inc. v. Wartsila N. Am.,*

-21-

*Inc.*, 485 F.3d 450, 460 (9th Cir. 2007) ("We decline to apply *Calder*[9] because it is well established that the *Calder* test applies only to intentional torts, not to the breach of contract and negligence claims presented here."). In cases involving mere negligence or breach of contract, however, courts analyze whether the defendant committed acts evidencing purposeful availment of the forum state. To the extent Plaintiff's claims for indemnity and contribution arise out of the Construction Contract, a purposeful availment analysis is appropriate. *Schwarzenegger*, 374 F.3d at 802. Plaintiff in Limitation argues, however, that its claims do not arise out of a contract. *See* Oppo. at 5:16-17 ("Star & Crescent's claims here do not arise out of the contract, but are based in tort and equity."); *see also id.* at 9:16-17 (same). With respect to the strict liability allegations, strict products liability is not an intentional tort; rather, it qualifies as an abridged version of negligence.[10] Thus, a purposeful availment analysis is also appropriate for the strict products liability claims. *See, e.g.*, *Macias v. LG Chem Ltd.*, No. SA-CV-2002416-DOCADSX, 2021 WL 780478,

---

[9] When examining purposeful direction, the court looks to the "*Calder* effects test" established by the Supreme Court's holding that a foreign act aimed at and producing an effect in the forum state "satisfies the first prong of the specific jurisdiction analysis." *Pebble Beach*, 453 F.3d at 1156 (citing *Calder v. Jones*, 465 U.S. 783 (1984). The *Calder* effects test examines whether a defendant has (1) acted intentionally, (2) expressly aiming his conduct at the forum state, and (3) caused a harm which was foreseeably going to be suffered in the forum state. *Pebble Beach*, 453 F.3d at 1156. Plaintiff in Limitation appears to advocate that the *Calder* effects test applies to this case. *See, e.g.*, Oppo. at 10:4-7 ("By the alleged wrong (installation of a defective seatbelt) said to have occurred in the construction of the *PATRIOT* in New Jersey, Movants caused a detrimental effect in the forum state of California: injuries to Ms. Spurr, a California resident, and exposure to liability for Star & Crescent from the same incident."). To the extent Plaintiff advances this argument, the Court rejects it given the *Calder* effects test does not apply to this case.

[10] Negligence requires proof of (1) a duty of care, (2) the breach of which (3) caused (4) the plaintiff's damages. *Monroe v. Zimmer U.S. Inc.*, 766 F. Supp. 2d 1012, 1028 (E.D. Cal. 2011). With strict liability, the plaintiff still needs to prove breach of a duty, causation, and damages, but the defendant has an absolute duty to make products safe; therefore, the defendant is strictly liable for the plaintiff's injuries caused by the defendant's products without the plaintiff having to prove that the defendant acted negligently. *See id.* (noting that for a strict products liability claim, a plaintiff must only show "that the injury to the plaintiff was caused by the defective condition").

-22-

at *3 (C.D. Cal. Feb. 28, 2021) ("Because plaintiff's action is based upon strict products liability . . . , this Court applies the 'purposeful availment' framework, which asks whether a defendant has "'deliberately engaged in significant activities within a State" such that it "has availed [it]self of the privilege of conducting business there.""""); *Haines v. Get Air LLC*, No. CV-1500002-TUCRMEJM, 2017 WL 1067777, at *7-8 n.4 (D. Ariz. Feb. 24, 2017), *report and recommendation adopted sub nom. Haines v. Get Air Tucson Inc.*, 2017 WL 1057966 (D. Ariz. Mar. 21, 2017) (noting that "Plaintiff's claims against Pacific are based on products liability and negligence; thus, the *Calder* test for intentional torts does not apply"). In sum, as Movants note in their reply, "[t]he proposition presented by Plaintiff—the effects test—relates only to cases involving intentional torts, not unintentional torts such as the negligence claimed here." Reply at 4:2-4.

In sum, as applies to this case, for the Court to find personal jurisdiction over Movants, it must determine they "purposefully availed themselves of the privilege of conducting activities within California, thus invoking the benefits and protection of its laws." Mot. at 17:16-20. Yet, Movants argue "[t]he facts of the matter clearly do not support such a finding." *Id.* at 17:20. The "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (internal citations omitted). In this case, Movants negotiated the Construction Contract from New Jersey; signed the Construction Contract in New Jersey; constructed the Vessel in New Jersey; delivered the Vessel in New Jersey; and are residents of New Jersey. *See* Mot. at 17:21-24. However, even if the defendant is not physically present with the forum state, its deliberate activities within the forum state or creation of continuing obligations with the forum or any of its residents invoking the benefits and protections of the laws of that forum, satisfy the purposeful availment requirement. *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 417 (9th Cir. 1997).

Although contracts typically trigger a purposeful availment analysis, a cause of action relating to a defendant's distribution or advertising is examined through a purposeful

-23-

direction analysis. *See Schwarzenegger*, 374 F.3d at 802. Here, however, even though Movants advertised within the forum, there is nothing in the record to suggest that Ms. Spurr's injuries in any way related to a single advertisement on the side of the Vessel for Movants' shipbuilding services, and although Plaintiff relies on the advertisement as a basis for jurisdiction, the Complaint never alleges the claims arise out of the advertisement. *See, e.g., Pebble Beach*, 453 F.3d at 1156 (failing to uncover any activities by Caddy which took place within the forum or would enable him to benefit from the protection of the laws of the forum state). In fact, courts have consistently held that "print advertisements that incidentally may have made their way to [a forum state do not] support a finding of jurisdiction without more substantial evidence of contacts with the state." *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007) (finding the plaintiff failed to demonstrate that the defendants' "extraordinarily limited contacts with Washington g[a]ve rise to personal jurisdiction there" where the plaintiff "provided the court with a copy of a single advertisement," and there was "no evidence that this advertisement was designed specifically for the Washington market"). Thus, the fact that Movants' advertisement once, or even twice (considering the boat in San Francisco, which is entirely unrelated to this case), entered California does not create a basis for specific jurisdiction in this case, especially considering Movants built the Vessel in New Jersey and had no say over where the purchaser took the Vessel.

Plaintiff in Limitation also argues Movants knew the Vessel would end up in California, *see* Oppo. at 5:2-10, 10:20-23, but that also fails to create a basis for subjecting them to liability. For example, in *World-Wide Volkswagen Corp. v. Woodson,* the Supreme Court rejected the proposition that a consumer's unilateral act of bringing the defendant's product into the forum state represents a sufficient constitutional basis for personal jurisdiction over the defendant. 444 U.S. at 288. The *World-Wide* plaintiffs, who were New York residents, purchased a new Audi automobile, which they drove through Oklahoma one year later. *Id.* While traveling through Oklahoma, another car struck their car, causing a fire that severely burned one of the plaintiffs and her two children. *Id.* The

-24-

plaintiffs brought a products-liability action in the Oklahoma district court, claiming injuries from the defective design and placement of the Audi's gas tank and fuel system. *Id.* One of the named defendants included, World-Wide Volkswagen Corp., a regional Audi distributor ("WWVC"), while the other defendant, Seaway Volkswagen, Inc., was a New York corporation and retail dealer ("Seaway"). *Id.* at 288-89. The Supreme Court held that WWVC and Seaway had not purposefully availed themselves of the privileges and benefits of Oklahoma law given they (1) carried "on no activity whatsoever in Oklahoma"; (2) closed no sales there; (3) performed no services there; (4) never solicited business there "either through salespersons or through advertising reasonably calculated to reach the State," (5) did not "regularly sell cars at wholesale or retail to Oklahoma customers or residents," and (6) did not "indirectly, through others, serve or seek to serve the Oklahoma market." *Id.* Instead, the plaintiffs sought "to base jurisdiction on one isolated occurrence and whatever inferences can be drawn therefrom: the fortuitous circumstance that a single automobile, sold in New York to New York residents, happened to suffer an accident while passing through Oklahoma." *Id.*

Like Seaway and WWVC in *World-Wide*, Movants have not (1) carried on any activity in California; (2) closed any sales here (regularly or otherwise); or (3) performed any services here. 444 U.S. at 295. Instead, like the *World-Wide* plaintiffs, Plaintiff in Limitation seeks to base jurisdiction "on one isolated occurrence and whatever inferences can be drawn therefrom: the fortuitous circumstance that a single [boat], sold in [California] to [California] residents, happened to suffer an accident while" navigating the waters of California. *Id.* The *World-Wide* Court also expressly rejected the plaintiffs' argument "that because an automobile is mobile by its very design and purpose it was 'foreseeable' that the Robinsons' Audi would cause injury in Oklahoma." *Id.* It noted that "'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *Id.* If it were, "a local California tire retailer could be forced to defend in Pennsylvania when a blowout occurs there; a Wisconsin seller of a defective automobile jack could be haled before a distant court for damage caused in New

-25-

Jersey; or a Florida soft-drink concessionaire could be summoned to Alaska to account for injuries happening there." *Id.* at 296 (internal citations omitted). In sum, like the plaintiff-consumers in *World-Wide*, who unilaterally brought the product they purchased (*i.e.*, their Audi) into the forum state (Oklahoma) even though they purchased it in New York, 444 U.S. at 288, Plaintiff in Limitation unilaterally elected to bring the product they purchased (*i.e.*, the Vessel) to San Diego, California even though they purchased it in New Jersey.

Seven years after *World-Wide*, in *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102 (1987), the Court expanded on *World-Wide*, by announcing the "stream of commerce plus" theory. The *Asahi* Court held that "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Asahi*, 480 U.S. at 112. The *Asahi* Court recognized that conduct potentially satisfying the "more" requirement included "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Id.* Whether the "additional conduct" alleged is sufficient to constitute purposeful availment is a case-by-case analysis particular to each Defendant.

Plaintiff in Limitation argues that "[t]he clear purpose of the [logo] clause was to ensure the advertisement of Movants' website, products and services in California, as a means of generating more business." Oppo. at 8:8-10. Plaintiff also points out that "[a] state generally has 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Id.* at 9:25-27 (citing *Burger King*, 471 U.S. at 473). Movants reply that Plaintiff in Limitation relies on the Construction Contract, efforts leading up to its execution, and economic benefits derived therefrom to argue Movants knew and expected the Vessel would be used in California but never cites any alleged tortious acts demonstrating how Movants availed themselves of the benefits and privileges of California. Reply at 4:17-23.

Under *Asahi*, Movants (1) designed the product (although not specifically for the

market in California) and (2) advertised in the forum state. 480 U.S. at 112. However, they did not (1) establish channels for providing regular advice to customers in California or (2) market the product through a distributor who agreed to serve as a sales agent in California. *Id.* While Movants helped get the product here, they did not decide where the Vessel was going or would stay. Instead, Plaintiff in Limitation's "unilateral act of bringing the defendant's product into the forum State was [not] a sufficient constitutional basis for personal jurisdiction over the defendant." *Id.*

Finally, Plaintiff in Limitation relies on *Jones Enterps., Inc. v. Atlas Serv. Corp.*, 442 F.2d 1136 (9th Cir. 1971) to argue this Court has personal jurisdiction. However, *Jones* is inapposite for several reasons. First, *Jones* involved a motion to quash service of process rather than a motion to dismiss for lack of personal jurisdiction. 442 F.2d at 1137-38. Moreover, *Jones* predates *Asahi*, which adopted the "stream of commerce" plus theory and expressly overruled the proposition that "placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Asahi*, 480 U.S. at 112; *see also* Reply at 4:26-28 (noting that *Jones* "predates the three-prong jurisdiction test which is controlling"). Thus, Plaintiff in Limitation's reliance on *World-Wide* to argue that delivery "into the stream of commerce with the expectation that they will be purchased by consumers in the forum State," Oppo. at 11:20-25 (citing *World-Wide Volksagen*, 444 U.S. at 297-98), is also inapposite as that case also preceded *Asahi* by seven years. Accordingly, the Court rejects Plaintiff in Limitation's reliance on *Jones* to argue the *Jones* standard was met here solely because Movants, like the *Jones* defendant, "directly contracted with a San Diego, California based tour boat company, knew that the *PATRIOT* was to be operated in San Diego, agreed to perform warranty repairs at a specific shipyard in Chula Vista, and even helped deliver the vessel to San Diego." Oppo. at 10:20-23. Plaintiff in Limitation's argument that just because Movants performed their work knowing the end product would end up in San Diego is sufficient to subject them to specific jurisdiction is unpersuasive. *See, e.g.*, Oppo. at 10:27-11: (arguing that Movants' argument that "placement of a product into the

-27-

1   stream of commerce is insufficient to support jurisdiction" is incorrect).

2       Despite relying on legal propositions overruled by *Asahi*, Plaintiff in Limitation

3   proceeded to rely on *Asahi* to argue that Movants, unlike the *Asahi* defendant, did more

4   than simply place a product into the stream of commerce because they (1) assisted in

5   transporting the product into the state; (2) agreed to perform repairs on the product within

6   the forum state; (3) advertised in California; (4) built one other vessel for another California

7   owner that is also used in California[11]; (5) derived substantial gross income from their

8   "forum-related activities"[12]; and (6) participated in prior negotiations, which in part, took

9   place in California given they took place by telephone/skype. Oppo. at 11:6-12:14.

10  However, the Court notes that (1) transportation of the canopy was not originally part of

11  the Construction Contract and was done as a favor after Plaintiff in Limitation's vendor

12  could not complete the task; (2) the repairs of the Vessel were only if issues arose within

13  the first ninety (90) days, which never occurred; (3) case law has confirmed a single

14  advertisement is not enough to establish jurisdiction; (4) the other vessel was also designed,

15  built, and delivered in New Jersey,[13] and neither party indicates whether Movants knew it

16

---

17  [11]    Plaintiff in Limitation points out that Movants' website advertises by showing a
18  photograph of the Vessel in San Diego, California. *See* https://www.oceanrockets.com/
    photo-gallery. Oppo. at 6:18-7:2. However, Movants correctly reply that the proposition
19  that a website available nationally may create a basis for personal jurisdiction has been
    dismissed "out of hand." Reply at 5:26-28; *see also CollegeSource, Inc. v. AcademyOne,*
20  *Inc.*, 653 F.3d 1066, 1075-76 (9th Cir. 2011) ("If the maintenance of an interactive website
21  were sufficient to support general jurisdiction in every forum in which users interacted with
    the website, 'the eventual demise of all restrictions on the personal jurisdiction of state
22  courts' would be the inevitable result.").

23  [12]    Plaintiff raises the fact that Movants received payment from Plaintiff in Limitation,
    who withdrew and transferred the money from its bank in California. However, "[t]he
24  mere act of sending payment to an Illinois company does not suffice to confer personal
25  jurisdiction over a foreign party." *Ingersoll Mill. Mach. Co. v. J. E. Bernard & Co.*, 508
    F. Supp. 907, 912 (N.D. Ill. 1981) (noting that "[e]ach transaction must be viewed 'in a
26  realistic commercial light' and the sending of blank contracts or commissions to persons
27  in the forum state is not necessarily sufficient to require the out-of-state party to defend an
    action brought in that forum").
28  [13]    *See* Reply at 2:26-28.

-28-

would be used in California; (5) the income derived was from constructing the boat in New Jersey, not from "forum-related activities," but rather New Jersey related activities; and (6) to the extent the negotiations on Mr. Engel's end took place in California, they took place in New Jersey on Mr. Yank's end. Thus, none of these factors persuades the Court that the assertion of jurisdiction over Movants would be appropriate.

The Court finds that Movants have not purposefully availed themselves of the privileges and benefits of California.

b.    <u>Whether the claim arises within the forum</u>

Movants argue they are also not subject to specific jurisdiction because "Plaintiff's claims against Sunsplash/Ocean Rockets do not rise out of, and are not related to, any activities of Sunsplash/Ocean Rockets within California." Mot. at 17:25-26. Plaintiff in Limitation responds that "Movants' forum-related activities relative to the construction [of the Vessel], which included the selection and installation of the allegedly defective seatbelt that resulted in Ms. Spurr's injury, were manifold and substantial and support personal jurisdiction as to this dispute." Oppo. at 10:1-4. Plaintiff in Limitation elaborates that "[b]y the alleged wrong (installation of a defective seatbelt) said to have occurred in the construction of the *PATRIOT* in New Jersey, Movants caused a detrimental effect in the forum state of California: injuries to Ms. Spurr, a California resident, and exposure to liability for Star & Crescent from the same incident." Oppo. at 10:4-7. Further, "[t]he connection between Star & Crescent's claims and Movants' California-related contacts is undeniable: had it not been for Movants' constructing and delivering the *PATRIOT*, a vessel they expected and intended would be operated in San Diego Bay, this incident and the resulting lawsuit would have never occurred." *Id.* at 12:26-13:2. Movants reply that "Plaintiff conflates contract-based contacts: negotiation, construction and delivery of two vessels in New Jersey, and contractual terms to deliver it to New Jersey and later transport it to California, with its tort claims related to product defects." Reply at 5:16-19. They elaborate that Plaintiff also fails to (1) allege with any specificity how Movants' "contract to construct a vessel, and actions or activities thereunder led to the current torts alleged or

-29-

(2) articulate how an injury aboard a vessel in 2018 is derived from, or connected with, the ultimate existence of the Vessel delivered to New Jersey in June 2013. *Id.* at 5:19-23.

To determine whether the cause of action arises out of "forum-related activities," the Ninth Circuit looks to whether "but for" the forum contacts the claim would have arisen. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). For example, in *Ballard*, the Ninth Circuit concluded the plaintiff's claim arising out of a Ponzi Scheme would not have arisen "but for" the foreign defendant's contacts with the forum (*i.e.*, doing business in the United States), finding the plaintiff carried her burden of proof. *Ballard*, 65 F.3d at 1500. Similarly, in *Panavision*, the same court held that "but for" defendant Dennis Toeppen's actions (*i.e.*, registration of the plaintiff's trademarks as his own domain names on the Internet), the harm (*i.e.*, trademark infringement) would not have occurred. *Panavision*, 141 F.3d at 1322. In this case, on the other hand, the harm is Plaintiff in Limitation's potential liability for Ms. Spurr's injuries, which arose while she was riding on a boat constructed by Movants. However, the harm (*i.e.*, payment of a judgment to Ms. Spurr) has not yet occurred. Further, Movants' limited contact with the forum included helping transport the canopy, two advertisements on the side of two boats in California, and entering into a contract with Plaintiff in Limitation. Certainly, "but for" Movants' construction of the Vessel, Ms. Spurr would not have been injured. However, insufficient evidence exists to allow this Court to include that Plaintiff in Limitation's liability action arises out of Movants' forum related activities instead of a third-party's act of negligence, or even Plaintiff in Limitation's own potential negligence in maintaining the boat.

Further, Plaintiff in Limitation's Complaint alleges that Ms. Spurr's injuries occurred on August 5, 2018, "during a high-speed turning maneuver," when "her safety belt became undone, and Spurr hit her head on a metal railing attached to the M/V PATRIOT adjacent to Spurr's seat." Compl. at 5, ¶ 19. Thus, the Complaint suggests that potentially the "high speed maneuver" as well as the metal railing and safety belt were responsible for Ms. Spurr's injuries. *See id.* However, the Complaint also pleads that H.O. Bostrom and Seatbeltplant.com "supplied Builder Defendants with the passenger seats and

-30-

seatbelt equipment, which Builder Defendants then installed on board the M/V PATRIOT."

Compl. at 5, ¶ 18; *see also id.* at 8, ¶ 37 (pleading that "Plaintiff in Limitation avers that Spurr's injuries, if any, were caused by the strict products liability of Builder Defendants, H.O. Bostrom and/or Seatbeltplanet.com in their respective capacities as designers, manufacturers, and sellers of the allegedly inherently defective seat and/or seatbelt equipment which allegedly gave way resulting in physical injuries to Spurr"). In sum, even if the Court had personal jurisdiction over Movants, Plaintiff in Limitation's claims suggest other parties may be responsible for Ms. Spurr's injuries, and it is not clear that her injuries arose "but for" Movants construction of the Vessel, which occurred outside of the forum.

Finally, Movants note in their reply brief that their "involvement in this matter has absolutely no bearing on the admiralty relief sought the Plaintiff in its Limitation Action and their dismissal would not frustrate the purpose of the Limitation Act itself" because "[c]ontrary to Plaintiff's assertions, this matter is not a complex admiralty action; at least as it relates to . . . Moving Defendants." Reply at 7:23-8:1. Movants are correct. First, dismissing Movants for lack of personal jurisdiction does not contravene the purpose of a limitation action because such actions serve to prevent vessel owner from having to answer multiple claims. 46 U.S.C. § 30511(c) (providing that once the owner has complied with the aforementioned security requirement, "all claims and proceedings *against the owner* related to the matter in question shall cease"); FED. R. CIV. P., Supp. R. F(1), (3); *In re Complaint of Ross Island Sand & Gravel*, 226 F.3d 1015, 1017 (9th Cir. 2000)); *Matter of Bowoon Sangsa Co., Ltd.*, 720 F.2d 595, 597-98 (9th Cir. 1983) ("Provided their lawsuits are subject to the orders of a district court, all damage claimants may be enjoined from maintaining separate suits and required instead to file their claims in the limitation proceeding."). The primary function of limitation actions is not to allow the vessel owner to simultaneously litigate all claims *brought by the owner* against it while also pursuing indemnity and contribution claims *against others*—in this case, non-resident defendants— in a forum with which those third parties lack sufficient minimum contacts.

Second, Movants point out that Plaintiff in Limitation's claims against Movants do

-31-

not fall within the Court's admiralty jurisdiction, Reply at 7:25-8:1, and as such, this Court lacks subject matter jurisdiction over Plaintiff's claims for indemnity and contribution against Movants. *See, e.g.*, 1 Benedict on Admiralty § 186 (2021) (noting that "[i]n the United States it is settled by authority that a contract for building a ship, or supplying materials for her construction, is not a maritime contract," and "[t]he supplying of the original equipment of the vessel, as well as the building of the hull, is held to be outside of the admiralty jurisdiction"); *see also Hatteras of Lauderdale, Inc. v. Gemini Lady*, 853 F.2d 848, 852 (11th Cir. 1988) (affirming the district court's imposition of sanctions against plaintiff's counsel pursuant to FRCP 11 for alleging admiralty jurisdiction without making a meritorious or good faith argument as to why the law should change given "the law is very clear that a contract for construction or sale of a vessel is not maritime in nature"); *Boat LaSambra v. Lewis*, 321 F.2d 29, 1966 AMC 691 (9th Cir. 1963) (finding dismissal for lack of admiralty jurisdiction appropriate over a dispute arising out of a contract for accessories that the defendant knew would be original equipment and became an integral part of the boat, which (1) "function[ed] . . . to make the boats safer and more useful as [a] pleasure craft," (2) "were purchased before the boats were ever," and (3) "were installed when the boats were still undelivered and at the dealer's premises"). The Complaint pleads that "with respect to Defendants, this Court has original jurisdiction over same [sic] under 28 U.S.C. § 1332 (diversity) . . . and 28 U.S.C. § 1333 (admiralty)." Compl. at 2, ¶ 1. Although the Court may have diversity jurisdiction over this case, the Complaint contains no specific allegations as to the amount-in-controversy, and it appears no basis for admiralty jurisdiction exists (as to Movants).

Third, and more importantly, Movants also point out that "the statute of limitations for Plaintiff's indemnity action against the Moving Defendants does not start to run until Plaintiff is found liable to the Claimant for her injuries." Reply at 8:1-4 (citing *Christian v. Cty. of L.A.*, 176 Cal. App. 3d 466, 471 (1986). Indeed, under both California and New Jersey law, claims for equitable indemnity and contribution accrue once the party seeking indemnification or contribution "incurs the loss of payment for the underlying claim or

-32-

judgment not when the underlying injury occurs." *See Seibels Bruce Grp., Inc. v. R.J. Reynolds Tobacco Co.*, No. C-99-0593 MHP, 1999 WL 760527, at *8 n.8 (N.D. Cal. Sept. 21, 1999) (applying California law); *Mettinger v. Globe Slicing Mach. Co.*, 153 N.J. 371, 387 (1998) (noting that "the statute of limitations pertaining to a defendant's claim for contribution or indemnification begins to accrue when the plaintiff recovers a judgment against it"). Thus, in this case, Plaintiff in Limitation's claims for relief for contribution and indemnification have not yet accrued and are not yet ripe.[14] Rather, Plaintiff in Limitation's claims against the defendants essentially seeks an advisory opinion on whether they may or may not be liable in the event Plaintiff in Limitation is liable for Ms. Spurr's injuries. The Court acknowledges that this issue is complex given FRCP 14 and Supplemental Rule C also allow a plaintiff in limitation to bring in third-party defendants on the basis of indemnity and contribution; however, Plaintiff in Limitation did not bring Movants in pursuant to those rules. In either event, it would not change this Court's lack of jurisdiction over Movants.

> c. <u>Asserting Personal Jurisdiction Over Defendants Would be Unreasonable</u>

Plaintiff in Limitation argues that "[d]ismissing Movants for lack of personal jurisdiction would substantially frustrate the purpose of the limitation act." Oppo. at 15:1-

---

[14] Article III of the United States Constitution limits the subject-matter jurisdiction of federal courts to justiciable "cases" and "controversies." U.S. CONST., ART. III, § 2. The United States Supreme Court has held that for a case to meet the justiciability requirement, a plaintiff must show (1) standing; (2) that the case is ripe; (3) the case is not moot; and (4) the case does not involve a political question. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006). For a case to qualify as ripe, it "must . . . not [be] dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Trump v. New York*, 141 S. Ct. 530, 535 (2020) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). This is because the role of federal courts "is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution." *Skyline Wesleyan Church v. California Dep't of Managed Health Care*, 968 F.3d 738, 746 (9th Cir. 2020).

2. It also notes that "because of this Court's monition, any action against Movants in New Jersey may be stayed pending resolution of Star & Crescent's limitation action." *Id.* at 15:2-4. Thus, Plaintiff in Limitation argues that "[e]fficient resolution of this case demands that jurisdiction be asserted over Movants in California, to avoid a multiplicity of action across two states." *Id.* at 15:4-6. Movants reply with a litany of reasons as to why asserting personal jurisdiction over them would be unfair. Reply at 6:9-8:10. However, the Court need not analyze the third factor of the Ninth Circuit's test, which examines whether the reasonableness of asserting personal jurisdiction, because "[t]he plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger* 374 F.3d at 802. "If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id.* Only where the plaintiff succeeds in satisfying both of the first two prongs, does the burden shift to the defendant "to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (declining to analyze reasonableness after the plaintiff failed to satisfy the first prong) (citing *Burger King*, 471 U.S. at 476-78).

Here, because Plaintiff in Limitation failed to carry its burden on the first two prongs, the Court need not analyze the last prong. However, even if it were to analyze that prong, given Movants are foreign corporations, the burden on the defendant would outweigh other fairness factors in determining whether or not asserting specific jurisdiction over them is reasonable. *Core-Vent*, 11 F.3d at 1113; *see also Exter Shipping Ltd. v. Kilakos*, 310 F. Supp. 2d 1301, 1319, 1327 (N.D. Ga. 2004) (granting the defendants' motion to dismiss for lack of personal jurisdiction in a maritime case brought pursuant to 28 U.S.C. § 1333 because the court's assertion of personal jurisdiction over the defendants, who were citizens of Greece, would not comport with traditional notions of fair play and substantial justice where the defendants did not (1) own, rent, use, or possess any real or personal property in Georgia; (2) maintain any bank accounts, telephone listings, or mailing addresses there; and (3) have an agent for service of process there).

**B.** **Plaintiff's Request for Jurisdictional Discovery**

Plaintiff in Limitation argues that "[i]f . . . the Court finds that Star & Crescent has

-34-

not established a prima facie case of personal jurisdiction over the Movants exists, Star & Crescent respectfully requests that it be allowed to conduct jurisdictional discovery before this Motion is decided." Oppo. at 15:9-12. Movants reply that "[h]aving failed to show that this Court should grant specific jurisdiction over the Moving Defendants, the Plaintiff should not be rewarded by engaging in a costly and fruitless search for more 'evidence' of jurisdiction," which would end up qualifying as "fruitless fishing expedition." Reply at 8:11-20.

The Ninth Circuit has reiterated that district judges have discretion to allow jurisdictional discovery. *See, e.g.*, *Am. W. Airlines, Inc. v. GPA Grp., Ltd.*, 877 F.2d 793, 800-01 (9th Cir. 1989) (holding "that the district court did not abuse its discretion in deciding the jurisdictional issue without allowing additional time for discovery"). "Nevertheless, it is not an abuse of judicial discretion to deny discovery before dismissing on jurisdictional grounds 'when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction.'" *Orchid Biosciences, Inc. v. St. Louis Univ.*, 198 F.R.D. 670, 673 (S.D. Cal. 2001). Plaintiff in Limitation argues that the fact that Movants built one other boat in California and asked Plaintiff in Limitation to place their logo on the Vessel "suggest that Movants had a stream of business making them 'at home' in the state." Oppo. at 15:21-16:7. The Court has already addressed that two advertisements and vessels in use in California do not create sufficient minimum contacts. Plaintiff in Limitation's request to conduct discovery to see if there are more boats in California arises from nothing more than speculation and directly contradicts Mr. Yank's declaration to the contrary. Moreover, even if there were other boats in use in California that had Movants' advertisement on them, it would not change the fact that Movants are not licensed to do business in California, operate in New Jersey, have no officers here, and nothing suggests that they have reached out to the forum state.

The Court finds the record in this case adequate to show a lack of personal jurisdiction and declines Plaintiff in Limitation's request for jurisdictional discovery. *See, e.g.*, *Kevin Barry Fine Art Assocs. v. Ken Gangbar Studio, Inc.*, 486 F. Supp. 3d 1353,

-35-

1362 (N.D. Cal. 2020) (granting a motion to dismiss while noting that jurisdictional discovery could not create jurisdiction where the jurisdictional facts were not disputed and the party contesting jurisdiction's only connection to the case was through work performed in another state, which was insufficient to show California contacts).

### C.   Motion to Dismiss for Improper Venue

Movants seek dismissal of this case pursuant to Rule 12(b)(3) on the basis that Plaintiff in Limitation bases its claims on the Construction Contract, but that contract contains a forum selection clause, choice of law clause, and arbitration provision. Reply at 18:23-19:22. Plaintiff in Limitation argues that assuming the arbitration "clause were at all relevant to the claims in dispute here (which it is not), it still would not apply to Star & Crescent's claims against Oceanrockets, because Oceanrockets was not a party to the Construction Contract." Oppo. at 16:21-24. The Court agrees that Ocean Rockets was not a party to the Construction Contract; however, New Jersey law does not foreclose the possibility that if Ocean Rockets is a subsidiary or parent company of Sunsplash, it may still be subject to the arbitration provision. *See Hirsch v. Amper Fin. Servs., LLC*, 215 N.J. 174, 188 (2013). As to Sunsplash, Plaintiff in Limitation argues that "the Ninth Circuit has held that the phrase 'arising out of' is not broad enough to compel arbitration of tort claims related to underlying contracts." Oppo. at 17:23-18:4. However, Plaintiff in Limitation's claims are not tort claims. They are claims for equitable contribution and indemnity. Nonetheless, Movants contend that Plaintiff in Limitation's lawsuit "is really a contract claim masquerading as a tort claim." Reply at 9:10-11. Movants contend that "[t]his dispute undeniably relates to the Construction Contract" given Section 15.1 requires arbitration of "any dispute which may arise between the parties." Reply at 9:11-15. Further, Section 16.2 of the Construction Contract provides that the parties "consent to the jurisdiction of the court of the State of New Jersey," and that "Cape May Count New Jersey will be the proper venue for legal action." Reply at 9:15-18.

Rule F provides that a complaint for limitation of liability "shall be filed in any district in which the vessel has been attached . . . to answer for any claim with respect to

-36-

which the plaintiff seeks to limit liability; or, if the vessel has not been attached or arrested, then in any district in which the owner has been sued with respect to any such claim." FED. R. CIV. P., Supp. R. F(9). In this case, at the time Plaintiff in Limitation had filed suit, it had already been sued in the San Diego Superior Court, making this district the appropriate venue. However, Rule F also states that "[f]or the convenience of parties and witnesses, in the interest of justice, the court may transfer the action to any district; if venue is wrongly laid the court shall dismiss or, if it be in the interest of justice, transfer the action to any district in which it could have been brought." *Id.* That being said, because the Court has already determined that Movants are not proper parties to his lawsuit, their convenience no longer factors into this Court's consideration, meaning the request is moot. *See, e.g., Tur v. YouTube, Inc.*, 562 F.3d 1212, 1214 (9th Cir. 2009) (concluding "that an issue is moot when deciding it would have no effect within the confines of the case itself"). Thus, even though 28 U.S.C. § 1631 allows a court to transfer or dismiss a case after determining it lacks personal jurisdiction, *Fitbit, Inc. v. Koninklijke Philips N.V.*, 336 F.R.D. 574, 586-87 (N.D. Cal. 2020), the Court notes that other defendants remain in this case who have not only failed to contest the Court's personal jurisdiction but also waived their ability to do so by responding to the Complaint. *See* Answers, ECF Nos. 23 (Seatbeltplanet.com), 32 (H.O. Bostrom). Further, because—when disregarding the propriety of Plaintiff in Limitation's claims against Movants for contribution and indemnity—venue of the Limitation Action is otherwise proper, and Movants seek transfer to a non-federal forum tribunal (*i.e.*, an arbitrator) on the basis of a forum selection clause, as is the case here, a motion to dismiss for improper venue pursuant to Rule 12(b)(3) is not the proper means for challenging venue. *See Atl. Marine*, 571 U.S. at 56.

Thus, Movants' Motion to Dismiss for Improper Venue is **DENIED AS MOOT**.

## V.    CONCLUSION

Although the Court dismisses Movants from this matter, the dismissal is *without prejudice. See, e.g., Kevin Barry Fine Art Assocs. v. Ken Gangbar Studio, Inc.*, 486 F. Supp. 3d 1353, 1362 (N.D. Cal. 2020) (granting a motion to dismiss for lack of personal

jurisdiction while noting that the "dismissal is without prejudice to KGSI's ability to pursue its claims in any other district where personal jurisdiction lies"). Consequently, Plaintiff in Limitation can, should it believe a basis exists for doing so, file suit in an appropriate forum having *in personam* jurisdiction over Movants. Plaintiff filed suit on January 28, 2021, *see* ECF No. 1, and as the Court's previous order established, "because none of Ms. Spurr's notices provided before July 28, 2020 evidenced a reasonable possibility that the damages would exceed the value of the Vessel," Order, ECF No. 12 at 21:21-24, the six month limitation period to file suit expired on January 28, 2021, 46 U.S.C. § 30511(a); FED. R. CIV. P., Supp. R. F(1), or the day Plaintiff filed suit, *see* Compl. However, Plaintiff in Limitation may still proceed with this limitation proceeding against the remaining defendants,[15] and should it be found liable for any of Ms. Spurr's damages, it can file a separate claim for contribution and indemnity against the responsible parties for any portion of a judgment for which Plaintiff in Limitation may pay. In fact, as the Court has noted, such claims are not yet ripe. *See, e.g., Katz v. China Century Dragon Media, Inc.*, 287 F.R.D. 575, 581 (C.D. Cal. 2012) (holding claims for contribution were premature as they would not accrue until "the defendant has satisfied the judgment against her" because such claims accrue "at that time that the party seeking contribution 'suffers loss by payment of a judgment . . . involving a greater share of the total debt than the party's proportionate liability'").

For the above reasons, the Court orders as follows:

1. Movants' Motion to Dismiss for Lack of Personal Jurisdiction is **GRANTED**. Both Movants are dismissed *without prejudice* for lack of personal jurisdiction.

2. Movants' Motion to Dismiss for Improper Venue is **DENIED AS MOOT**.

3. The Clerk of the Court is instructed to terminate Movants from this case.

---

[15] That being said, the Court questions the propriety of Plaintiff in Limitations' claims for relief as to H.O. Bostrom and Seatbeltplanet.com given such claims may not yet be ripe, and neither of those two defendants in this case are parties to Ms. Spurr's State Court Action, meaning they would not have a basis to seek limitation form liability themselves.

-38-

3:21-cv-00169-BEN-JLB

4.      The Court notes that the time period for filing claims expired on May 26, 2021. *See* Order, ECF No. 12; Notice, ECF No. 13. To date, Ms. Spurr is the only party to file a claim. *See* Claim, ECF No. 29. Thus, the parties should be prepared to discuss whether the single claimant exception to the Limitation Act applies to this case at the August 18, 2021 Case Management Conference.

**IT IS SO ORDERED.**

DATED:    July 14, 2021

HON. ROGER T. BENITEZ
United States District Judge